EDELSTEIN *v.* NATIONWIDE MUTUAL INSURANCE COMPANY

[No. 63, September Term, 1968.]

456

*Decided February 20, 1969.*

The cause was argued before HAMMOND, C. J., and BARNES, MCWILLIAMS, SINGLEY and SMITH, JJ.

*Eugene A. Alexander, III* with whom was *Sidney Blum* on the brief, for appellant.

*Phillips L. Goldsborough, III,* with whom were *Theodore B. Cornblatt* and *Smith, Somerville & Case* on the brief, for appellee.

BARNES, J., delivered the opinion of the Court.

This appeal challenges the correctness of an order of the Circuit Court for Baltimore County (Maguire, J.), dated March 5, 1968 sustaining, without leave to amend, a demurrer filed by the appellee, Nationwide Mutual Insurance Company (Nationwide), which was plaintiff and counter-defendant below, to the Third Count of the Amended Counter-Claim, filed by the appellant, Jack Edelstein, on January 16, 1968.

Nationwide filed an action in assumpsit on March 29, 1965

against Edelstein. The declaration consisted of four counts, the first three counts being the common counts for money lent, money received and for money due on accounts stated, respectively, the fourth count being a special count reciting that Nationwide and Edelstein on or about July 31, 1962 entered into a Career Plan Contract, Nationwide paid certain monies in accordance with the contract terms and, although Nationwide had demanded repayment of the monies, Edelstein had refused to pay the balance due of $3,572.40. Nationwide was also alleged to have advanced Edelstein $93.10 under a Pre-License Loan Contract, made shortly prior to the Sales Career Plan Agreement and Edelstein refuses to pay that amount. The *ad damnum* clause claimed $3,645.55.

The declaration was accompanied by a Motion for Summary Judgment supported by an affidavit of an Accounts-Collection Supervisor who swore that the attached account was bona fide and showed a balance of $3,645.55. The Career Agents Financing Plan, dated July 31, 1962, was filed together with an account entitled "Sales Career Plan Register" showing a number of items beginning September 10, 1962 and ending March 15, 1965, showing a balance due of $3,572.45 (vs. $3,572.40 alleged in the declaration). Pleas were filed by Edelstein and an affidavit in support of a plea of "set off." Nationwide filed a supplementary affidavit, with a new account showing a net balance of $3,576.27. The Circuit Court denied the plaintiff's motion for summary judgment on November 3, 1966. Thereafter on June 15, 1967, Edelstein, the defendant, filed a counter-claim against the plaintiff Nationwide, with three counts. Count 1 was a common count for money received. Count 2 was a common count for money due on accounts stated. Count 3 was a special count alleging various matters in regard to alleged wrongful cancellation of policies. The ad damnum clause in the counter-claim claimed $30,000 damages. Nationwide demanded particulars to the two common counts and the particulars not having been filed, obtained a judgment by default in regard to these two counts. Nationwide filed a demurrer to Count 3 of the counter-claim.

Edelstein, on January 16, 1968, filed an Amended Counter-Claim again including the same two common counts which were

later the subject of a successful motion ne recipiatur filed by Nationwide, so that we are not concerned with Counts 1 and 2 in this appeal. Count 3 of the Amended Counter-Claim, however, contained additional allegations than those contained in the original Count 3 and averred the following:

"3. For that *on or about July 31, 1962,* the Counter-Defendant entered into a *Career Plan Contract* with the Counter-Plaintiff. As a *condition precedent and consideration for the aforesaid Contract,* the Counter-Defendant *agreed to make advances to the Counter-Plaintiff* against future commissions that the Counter-Plaintiff would be entitled for writing various types of insurance for the Counter-Defendant. That *at the time the aforesaid Contract was entered into, and with the full knowledge and consent of the agents, servants and employees of the Counter-Defendant,* the Counter-Plaintiff established an *office in the Northwest section of Baltimore City, which was at that time largely populated by negroes.* That it was a condition precedent to the *aforesaid Contract and* the *Career Agents Financing Plan,* that *the Counter-Plaintiff would sell insurance to the members of the Negro race provided that the aforesaid customers met qualifications set by the Counter-Defendant for its other customers.* That *after the Counter-Plaintiff had spent a considerable amount of time, effort and money to establish a going insurance business,* the Counter-Defendant *without warning and without notice to the Counter-Plaintiff 'blacked out' the area in which the Counter-Plaintiff* was soliciting business, and *refused to insure customers secured by the Counter-Plaintiff, solely because of the customers' race,* thus denying and depriving the Counter-Plaintiff of the opportunity to earn commissions and make payments under the Career Agents Financing Plan. That the Counter-Defendant, without just cause or reason, cancelled and refused to renew many policies secured by the Counter-Plaintiff, *even though the aforesaid policyholders had excellent driving records.* That this action on the part of the Counter-

Defendant deprived the Counter-Plaintiff of considerable earning opportunities and commissions to which he would have been entitled and *was a breach of the agreements between the parties.* The aforesaid action on the part of the Counter-Defendant was illegal and unlawful.

"Wherefore the Counter-Plaintiff claims $30,000.00 damages." (Emphasis supplied.)

Nationwide filed a demurrer to Count 3 of the amended counter-claim alleging two specific grounds, as follows:

"1. The aforesaid count fails to allege facts legally sufficient to show the existence of a cause of action in the defendant and counter-claimant against the plaintiff and counter-defendant.

"2. The aforesaid count fails to allege facts legally sufficient to show that the plaintiff and counter-defendant was guilty of any breach of its contractual agreement with the defendant and counter-claimant resulting in damages to the defendant and counter-claimant."

On March 5, 1968, the trial court passed an order sustaining Nationwide's demurrer without leave to amend and on April 9, 1968, filed a memorandum setting forth the trial court's reasons for its action. The important portion of that memorandum was as follows:

"The law is well settled, both in this jurisdiction and in many other jurisdictions, that an insurance company is entitled to select the risks which it will insure, and no obligation necessarily rests upon it to accept an application, even if part or all of the premium has been paid. See *Couch on Insurance 2d,* Sections 7:9; and *Maryland Law Encyclopedia,* Insurance, Section 53. Standard Agent's Agreement, dated *December 12, 1963,* including particularly Sections 2f, 4a, 4c thereof, and Sections 1, 2, 3, 6, 7 and 9 of the general conditions applicable thereto."

The Standard Agent's Agreement, dated December 12, 1963,

to which the trial court referred in its memorandum had been filed as an exhibit by Edelstein, attached to his affidavit, dated April 19, 1965 (filed April 20, 1965), in support of his plea to the original declaration. It will be observed, however, that Count 3 of the amended counter-claim, filed on January 16, 1968, in no way referred to the Standard Agent's Agreement of December 12, 1963, but referred to the Career Plan Contract of July 31, 1962, and an additional or supplemental agreement entered into on or about July 31, 1962.

The Standard Agent's Agreement, dated December 12, 1963, was effective January 1, 1964, between Nationwide, Nationwide General Insurance Company, Nationwide Mutual Fire Insurance Company and Nationwide Life Insurance Company, referred to as the "Companies", and Edelstein. It is an elaborate written agreement, which with its General Conditions Applicable to All Attached Schedules and its General Conditions applicable to Schedules of three of the named companies, covers 14 printed pages in the appendix to the appellee's brief.

Section 2f of the agreement of December 12, 1963, provides that "if an application, policy or any part thereof is *rejected or cancelled for any reason* before the expiration of the policy period," or if a reduction in premium occurs, or if any overpayment to the agent occurs, the agent's compensation on account of the amount returned or credited to the policyholder, or the overpayment to the agent "shall be charged to the Agent and shall be an indebtedness due the Companies from the Agent." (Emphasis supplied.)

Section 4a of the agreement of December 12, 1963, provides that the agreement shall continue from its effective date until the end of the current license year and shall be automatically renewed thereafter from year to year unless sooner terminated. Section 4a further provides that the agreement automatically terminates upon the date the agent's license to act as agent is revoked or cancelled or upon the agent's death and may be terminated by either party by giving written notice to the other.

Section 4c provides that each company "will *prescribe rules and regulations under which it will insure risks;* and each Company *retains the right to change, alter or amend such rules and regulations at any time and without notice to or consent of the*

*Agent* and any such change, alteration or amendment shall become effective on the date specified therein." (Emphasis supplied.)

Section 4e provides that the execution and delivery of the agreement "shall supersede and take the place of any prior Agreement; provided that the execution and delivery of this Agreement shall not affect the obligation of the Agent to pay any money due the Companies from the Agent under the provisions of any other agreement, written or oral."

In the attached General Conditions applicable to all attached schedules, the method of compensation is spelled out. Section 2 of the General Conditions states that the original compensation and renewal service fees and percentages of the cash premiums "received and accepted by the Company, except as the Special Conditions may provide * * *." Section 7 provides that upon termination the agent will be entitled to compensation on business written to the date of cancellation "provided: (1) such business is accepted by the Company, * * *." Section 9 provides that "[t]he books, records, accounting and statistical procedures of the Companies shall be used and shall control in determining all matters in connection with the Schedules of Compensation."

It seems clear that if the provisions of the agreement of December 12, 1963, were the controlling contract and were not modified by any subsequent, enforceable contract or were not made ineffective by reason of an estoppel, waiver or other sufficient legal reason, Edelstein could not recover for alleged breaches of prior contracts between the parties occurring subsequent to January 1, 1964, inasmuch as Section 4e specifically provides that the agreement supersedes and takes the place of any prior agreement, and the other sections set forth the right of Nationwide to select its risks, terminate the agreement and make and change its regulations without notice to the agent in regard to the risks it will insure.

It is well established in Maryland and generally that an insurance company has the unqualified right to select the risks it considers profitable to insure and the company is under no obligation to accept an insurance application submitted by its agent or broker. It is further established that no contract of

insurance exists until the risk is accepted by the company. As our predecessors stated in *American Casualty Co. v. Ricas,* 179 Md. 627, 634, 22 A. 2d 484, 488 (1941) :

> "Insurance companies have a legal right to fix the terms and duration of the policies issued by them, and they are not compelled to accept every application presented, and may stipulate upon what terms and for what period of time the risk will be accepted. * * * A contract of insurance must be assented to by both parties, either in person, or by their agents."

In 12 Appleman, *Insurance Law and Practice,* Section 7121 at 154-55 (1943), the general rule is stated as follows :

> "In the absence of statute, it is purely voluntary on the part of the company as to whom it will insure, and it is under no duty to write insurance for any particular applicant. The insurer is at liberty to choose its own risks and may accept or reject applicants as it sees fit." [1]

The trial court sustained the demurrer, without leave to amend, on the theory that the provisions of the agreement of December 13, 1963 could be considered in ruling on the demurrer. In our opinion, this was erroneous.

As we have already observed, Count 3 in no way mentions the agreement of December 12, 1963; on the contrary, it refers to a Career Plan Contract entered into on or about *July 31, 1962* (the same contract mentioned by Nationwide in Count 4 of its declaration filed March 29, 1965), and certain alleged other contracts or agreements which were the consideration and

---

1. The Act of 1965, Chapter 927, § 1, Code (1957), Article 48A, § 61A (1968 Repl. Vol.) provides that no insurer shall decline to issue or renew contracts of motor vehicle insurance solely on account of geographic area in the State wherein the subject of the risk is located or the applicant's or insured's address, unless the insurer gives not less than 60 days written notice to the Insurance Commissioner, which shall be an open filing as a matter of public record. This Act, however, was not effective until June 1, 1965 so that it is not applicable in the present case.

condition precedent to the agreement of July 31, 1962. The fact that the agreement of December 12, 1963 was filed on April 20, 1965 with an affidavit in support of a plea filed to the original declaration would not make this document a part of Count 3 of the amended counter-claim filed on January 16, 1968, which did not mention such a contract and which, on the contrary, mentioned different contracts entered into in 1962. There was no demand for particulars filed by Nationwide and there was also no demand for the production of documents. It seems clear, therefore, that the trial court could not consider the agreement of December 12, 1963, as part of the allegations of Count 3. It is well settled that in ruling on a demurrer to a pleading, only those matters which appear on the face of the pleading in question, as particularized, or those of which the court may take judicial notice, may be considered by the court in ascertaining whether or not the pleading states a good cause of action. We have held that a plaintiff's deposition, which forms no part of the plaintiff's pleading, could not be used to enlarge the scope of the defendant's demurrer to the declaration. *Pullman Co. v. Ray*, 201 Md. 268, 94 A. 2d 266 (1953).

We are not persuaded that the allegations of Count 3 on their face necessarily state a cause of action, but as the trial court did not decide this question and as it has not been sufficiently briefed or argued before us, we shall remand the case without affirmance or reversal under Maryland Rule 871, so that the plaintiff may amend Count 3 of the amended counter-claim, if he so desires, with further proceedings thereafter, or, if he elects not to amend, for further proceedings in regular course, including a consideration by the trial court of the sufficiency of the allegations of Count 3 without regard to the provisions of the agreement of December 12, 1963.

> *Case remanded without affirmance*
> *or reversal pursuant to Maryland*
> *Rule 871 for further proceedings*
> *as set forth in this opinion, the*
> *costs to be paid by the appellee.*