PRINCE GEORGE'S COUNTY, MARYLAND ET AL. *v.*
HERSCHEL BLUMBERG ET AL.

[No. 147, September Term, 1979.]

*Decided August 22, 1980.*

276

*Motion for reconsideration filed September 19, 1980; denied September 26, 1980.*

The cause was argued before MURPHY, C. J., and SMITH, DIGGES, ELDRIDGE, COLE, DAVIDSON and RODOWSKY, JJ.

*Alan E. D'Appolito, Associate County Attorney,* with whom were *Robert B. Ostrom, County Attorney,* and *Michael O. Connaughton, Deputy County Attorney,* on the brief, for Prince George's County, part of appellants. *Paul T. Sisson, Associate Counsel,* for Washington Suburban Sanitary Commission, other appellant.

*Barbara A. Sears,* with whom were *Joseph P. Blocher* and *Linowes & Blocher* on the brief, for appellees.

DIGGES, J., delivered the opinion of the Court.

We granted certiorari in the present case to consider the multifarious issues generated by the revocation of respondents Marvin and Herschel Blumbergs' building and water-sewer permits by petitioners Prince George's County and the Washington Suburban Sanitary Commission

(WSSC), respectively. Since we conclude, however, that the respondents failed to exhaust the available administrative remedies, we do not reach the merits of the case but reverse in part the judgment of the Court of Special Appeals, and direct that court to likewise reverse in part the judgment entered by the Circuit Court for Prince George's County.

The factual backdrop to this litigation is both extensive and complex, but, because of the view we take, may be somewhat condensed here. Respondents own approximately forty acres of ground in the Hyattsville area of Prince George's County on which they had planned to construct a high-rise residential building consisting of two towers, twenty-seven and thirty-five stories high. Aware that their land was situated in an area of restricted sewer service, the Blumbergs began, in the summer of 1971, to make inquiries of the WSSC as to whether such service would be available for their project.[1] Assured that it was still available, the Blumbergs began preparing final plans for their building, and in April 1972 made a formal application to the WSSC for water and sewer service. The commission approved the application on October 25, 1972, and issued the permits on November 13 of that year.

Prior to receiving the necessary WSSC authorizations, respondents applied to Prince George's County for a building permit, listing themselves as both owners and contractors of the proposed structure. Approval was granted by the county's Department of Licenses and Permits, which in January 1973 issued a building permit for the thirty-five story tower, in February issued a second permit for the twenty-seven story tower, and subsequently, consolidated the two permits into a third one on March 14, 1973. With all necessary authorizations in hand, the Blumbergs made their

---

1. The Blumbergs' property is situated in the Anacostia Drainage Basin, where, in 1970, the Secretary of the Maryland Department of Health and Mental Hygiene imposed a "sewer moratorium" which "bar[red] the granting of new authorizations after [May 20, 1970,] except with the approval of the State Department of Health and Mental Hygiene." The WSSC interpreted this moratorium order, however, to permit connections to the existing system if the commission determined there were "unusual circumstances."

final preparations to begin construction; however, their problems were just beginning.

A few days before the actual construction commenced, respondents learned that the county was considering a revocation of their building permit because their application had failed to list a licensed builder as required by a recently enacted county law.[2] This law became effective January 1, 1973, and established a licensing requirement for all building contractors within the county, *see* Prince George's County Code §§ 2-253.6 to 2-253.18 (1975).[3] In doing so, the ordinance specifically provided that a building permit "shall not be issued to any person except a duly licensed building contractor ...." *Id.* § 2-253.15. Although the Blumbergs' building permit application had been filed prior to the new law's effective date, it was not approved and the permit issued until after that date. While respondents believed, as both builder and owner, that this law did not apply to them because of the manner in which the act defines "building contractor",[4] they nevertheless filed an application for a contractor's license on March 28, 1973, with the Department of Licenses and Permits. A temporary contractor's license was issued to the respondents on April 5, 1973, and a permanent one was delivered on April 17.

While their application for a contractor's license was pending, the Blumbergs on March 29 began construction of the building because of a condition imposed by the WSSC

---

**2.** As Judge Wilner vividly points out in his opinion for the Court of Special Appeals, the underlying reason for the attempted revocation by the county was due to the mounting surrounding community opposition to the proposed height of the building. Prince George's Co. v. Blumberg, 44 Md. App. 79, 88-89, 407 A.2d 1151, 1159 (1979).

**3.** For the reader's convenience, we shall cite to the most recent (1975) Prince George's County Code when discussing the provisions pertinent to this case, unless a change in the applicable law since 1972 is material.

**4.** Prince George's County Code § 2-253.6 (1975) defines "building contractor" as follows:

*Building Contractor.* The term "building contractor" shall mean any person, firm, co-partnership, association, or a corporation, or other organization or combination thereof that for a fixed price, commission, fee or percentage accepts or offers to accept, orders or contracts for performing or superintending the building or construction of any building or structure that is designed to be used as a residence or dwelling, or who constructs for sale any new building or structure for occupancy as a residence or dwelling.

when it issued the water and sewer permits requiring that the footings of the proposed building be completed and pass county inspection within six months of their issue date (here by May 10), otherwise the sewer and water permits would become void. The work continued until April 12, 1973, when the county's Chief Building Inspector, Mr. James R. Novak, issued a stop work order directing the respondents to cease further construction. In an accompanying letter, Mr. Novak explained that "[r]eview of [your building] permit reveals that it was illegally issued because the contractor listed on the permit application does not possess a valid residential Building Contractor's License . . . . The permit is, therefore, null and void." Respondents, having already received their temporary contractor's license prior to the inspector's order, immediately notified the county of this fact, and asked that their building permit be revalidated and the stop work order rescinded. Before the county could rectify its error, however, the Blumbergs' problem was compounded by actions of the WSSC. Upon being notified by the county (which was the normal practice) that the respondents' building permit had been withdrawn, the WSSC, on April 11, 1973, suspended the efficacy of its water and sewer permits. This, in turn, led the county, on April 19, 1973, to notify the Blumbergs that until the WSSC's suspension was removed, the building permit could not legally be reissued.

The Blumbergs, perceiving the predicament which was developing, arranged a meeting with William W. Gullett, the then Prince George's County Executive, in an attempt to solve the problem. Mr. Gullett informed respondents that due to its height, considerable opposition to the building had developed in the residential neighborhoods surrounding the project; however, the county executive further indicated that if the Blumbergs would reduce the thirty-five story tower to twenty-seven stories the building permit could be reissued. As a result of this meeting, respondents altered their plans and submitted to the county, on May 8, 1973, a revised application for a building permit, this time to construct twin twenty-seven story towers. The new application, as are all building applications, was routinely forwarded to the WSSC

in order that it might review the project for sewer and water availability. The commission, having received a request from the Blumbergs for an extension of the six month time limit on their previously issued but now suspended water and sewer permits, as well as update information concerning sewage disposal conditions in the Anacostia Basin,[5] set for a hearing all matters then pending with regard to respondents' permits. In the meantime, the county delayed taking action on the revised application for a building permit.

On May 23, 1973, the hearing scheduled by the commission took place with the Blumbergs and other interested citizens present and represented by counsel. The commissioners heard argument from all desiring to be heard after receiving evidence concerning not only the prior commission action with regard to respondents' applications, but also the present availability of sewer service in the Anacostia Basin area. Following this hearing, the WSSC passed, on May 30, 1973, an order: (i) revoking the previously issued water and sewer permits because they had been granted in contravention of the commission's own rules, as well as on mistaken information; (ii) declaring that the outstanding permits, even if validly issued, had "expired ... on May 10, 1973 because the County footings inspection for the buildings to which the permits pertain had not been completed;" and (iii) denying the request for a new permit because of the inability, at that time, of the commission's sewage treatment system to handle the increase which the building would generate.

Following this series of events, the controversy entered the courts when the Blumbergs, on July 10, 1973, filed a bill of complaint in the Circuit Court for Prince George's County seeking injunctive and declaratory relief against Prince

---

5. In January 1973, new sewage flow meters were installed at the WSSC's Anacostia Pumping Station at Bladensburg, Maryland. Flow figures for the period January 17-March 31, 1973, indicated that the pumping station overflowed 39 out of 74 days, and that a total of 20.6 million gallons of raw, untreated sewage was therefore discharged into the tidal portion of the Anacostia River. This was characterized in a February 1973 report by the Prince George's County Health Officer as a "serious health hazard."

George's County, County Executive Gullett, and the WSSC. In essence, respondents requested that the court declare that the county's stop work order and WSSC's suspension of their permits was void and unenforceable, and that it enter an order "prohibiting the Defendants ... from refusing to reissue Plaintiffs' building permit, ... continuing the suspension of the sewer or water permits, or ... otherwise interfering with the construction by Plaintiffs of the Plaza Towers Apartments ...." More than three years later, respondents amended their bill of complaint by joining Winfield M. Kelley, Jr., then County Executive, as an additional defendant, and requesting as a codicil to the previously sought relief, an award of $4.5 million in compensatory damages and $500,000 in punitive damages — the former representing the cost of delaying construction, and the latter "for Defendants' willful and deliberate misuse of government power." Two years later, the case finally went to trial (more than five years after it was initially instituted) [6] and the Circuit Court for Prince George's County (Bowen, J.) ordered, on January 30, 1979, that the county and WSSC reissue the revoked permits; awarded $3,673,919 in compensatory damages against the county; dismissed the damage action against the WSSC on the ground of sovereign immunity; and sustained demurrers filed by the two former County Executives (Gullett and Kelley), dismissing them from the case. All parties, except Gullett and Kelley, appealed the trial court's decision to the Court of Special Appeals, which affirmed all aspects of Judge Bowen's order, except for his calculation as to the monetary amount due and his determination that the WSSC was entitled to claim immunity from responding in damages. *Prince George's Co. v. Blumberg,* 44 Md. App. 79, 407 A.2d 1151 (1979). We granted certiorari.

---

6. We note that while respondents initially requested that the "court hold a prompt hearing on the merits" of both the original and amended bill of complaints, they did little to bring about a speedy resolution of the dispute. In fact, the record indicates that on January 9, 1976, the clerk of the circuit court notified the Blumbergs that their action was to be dismissed under Maryland Rule 530 for lack of prosecution. However, Rule 530 was suspended at the request of respondents, and over the objection of petitioners, *nine times* by the Circuit Court for Prince George's County.

Before this Court, the petitioners, as well as the respondents as cross-petitioners, raised numerous issues (nine in all) regarding the decision below, including, among others, whether Prince George's County and the WSSC have immunity from monetary liability for their actions here, whether the claim of damages is barred by limitations or laches, whether the petitioners' revocations of the permits was lawful, whether an award of damages for the increased cost of capital due to delay in resolving this dispute is proper and whether the bill of complaint stated a cause of action against County Executives Gullett and Kelley in their individual rather than official capacities. However, the question which we find dispositive of the present case as it pertains to Prince George's County, and which renders it unnecessary that we examine any of the other issues presented concerning it, is the contention of the county that the circuit court lacked jurisdiction over this action because of the Blumbergs' failure to exhaust the statutorily prescribed administrative remedy for its complained of action here. Since we determine that this impediment is equally applicable to the claim against the WSSC, we will direct dismissal of the action as it pertains to each of these governmental entities. Further, since we agree with both the trial and intermediate appellate courts that no cause of action was stated against the two Prince George's County Executives, we will affirm the judgment entered in their favor.

An examination of the decisions of this Court over the last four or five decades will supply ample support for the statement that there are few legal tenets which have received greater acceptance into the jurisprudential law of this State than the one announcing:

> [A] claimant ordinarily must seek to redress the wrong of which he complains by using the statutory procedure the legislature has established for that kind of case, if it is adequate and available, and that if he is unsuccessful and wishes aid from the courts, he must take judicial appeals in the manner the legislature has specified rather than by seeking to

invoke the ordinary general jurisdiction of the courts .... [Consequently, we] have consistently held that where a special form of remedy is provided, the litigant must adopt that form and must not bypass the administrative body or official, by pursuing other remedies. [*Agrarian, Inc. v. Zoning Inspector*, 262 Md. 329, 332, 277 A.2d 591, 592 (1971).]

See in addition, *e.g., Harbor Island Marina v. Calvert Co.*, 286 Md. 303, 308, 407 A.2d 738, 741 (1979); *Klein v. Colonial Pipeline Company*, 285 Md. 76, 83, 400 A.2d 768, 772 (1979); *White v. Prince George's Co.*, 282 Md. 641, 649, 387 A.2d 260, 265 (1978); *DuBois v. City of College Park*, 280 Md. 525, 533, 375 A.2d 1098, 1104 (1977); *Comm'n on Med. Discipline v. Bendler*, 280 Md. 326, 330, 373 A.2d 1232, 1234 (1977); *Comm'rs of Cambridge v. Henry*, 263 Md. 370, 373-74, 283 A.2d 415, 417 (1971). The principal reasons for this exhaustion requirement with respect to administrative bodies are manifest — (i) the issues are largely within the expertise of the involved agency to hear the evidence and determine the propriety of the request; (ii) the courts would be undertaking functions the legislature thought could best be performed by an agency; and (iii) courts might be called upon to decide matters that would never arise if the prescribed administrative remedy was followed. *Gingell v. County Commissioners*, 249 Md. 374, 376-77, 239 A.2d 903, 905 (1968). However, and as our decisions also make clear, there are exceptions to the administrative agency exhaustion rule that have been recognized. Among them are:

1. When the legislative body has indicated an intention that exhaustion of administrative remedies was not a precondition to the institution of normal judicial action. *White v. Prince George's Co.*, 282 Md. 641, 649, 387 A.2d 260, 265 (1978).

2. When there is a direct attack, constitutional or otherwise, upon the power or authority (including whether it was validly enacted) of the legislative body to pass the legislation from which relief is

sought, as contrasted with a constitutional or other type issue that goes to the application of a general statute to a particular situation. *Harbor Island Marina v. Calvert Co.,* 286 Md. 303, 308, 407 A.2d 738, 741 (1979).

3. When an agency requires a party to follow, in a manner and to a degree that is significant, an unauthorized procedure. *Stark v. Board of Registration,* 179 Md. 276, 284-85, 19 A.2d 716, 720 (1941).

4. Where the administrative agency cannot provide to any substantial degree a remedy. *Poe v. Baltimore City,* 241 Md. 303, 308-09, 216 A.2d 707, 709 (1966).

5. When the object of, as well as the issues presented by, a judicial proceeding only tangentially or incidentally concern matters which the administrative agency was legislatively created to solve, and do not, in any meaningful way, call for or involve applications of its expertise. *Md.-Nat'l Cap. P. & P. v. Wash. Nat'l Area,* 282 Md. 588, 594-604, 386 A.2d 1216, 1222-27 (1978).

Of these, the Blumbergs only rely on the fourth as having any bearing on the case now before us, a contention which we discuss later.

In order to explain why we believe the Blumbergs had an administrative procedure available for substantially addressing their grievances against petitioners, which, as a prerequisite to judicial relief, they were obliged to follow, it is desirable that we outline the statutory schemes establishing this remedy. Turning first to the actions of the county, we begin by noting that Prince George's County, being a charter county established pursuant to Article XI-A of the Maryland Constitution, may exercise only those legislative powers expressly granted to such political subdivisions by the General Assembly. Md. Const., Art. XI-A, § 3; *e.g., Ritchmount Partnership v. Board,* 283 Md. 48, 56-57, 388 A.2d 523, 529-30 (1978); *Mont. Citizens*

*League v. Greenhalgh,* 253 Md. 151, 158, 252 A.2d 242, 245 (1969). One such power specifically delegated to charter counties by the legislature in the Express Powers Act, Md. Code (1957, 1973 Repl. Vol., 1979 Cum. Supp.), Art. 25A, § 5, is the authority:

> [t]o enact local laws ... establish[ing] a county board of appeals whose members shall be appointed by the county council; ... and for the decision by the board on petition by any interested person and after notice and opportunity for hearing ..., of such of the following matters arising (either originally or *on review of the action of an administrative officer* or agency) under any law, ordinance, or regulation of ... the county council, as shall be specified from time to time ...: the issuance, renewal, denial, *revocation, suspension, annulment,* or modification *of any license, permit* ... or other form of permission *or of any adjudicatory order* .... [*Id.* § 5(U) (emphasis added).]

If a county establishes a board of appeals in conformance with this section, then "any person aggrieved by the decision of the board ... may appeal to the circuit court for the county" to seek review of this decision, and the circuit court's action is reviewable by appeal to the Court of Special Appeals. *Id.* Moreover, the General Assembly has directed that "[t]he review proceedings provided by this subsection *shall be exclusive.*" *Id.* (emphasis added).

Pursuant to this authorization, Prince George's County created, by ordinance, a Board of Appeals "to hear and determine all administrative appeals allowed by ordinance or law," with the exception of three matters not here relevant. Prince George's County Code §§ 2-117; 2-118 (1975). More particularly, county law provides:

> The owner or occupant of a building or structure or any directly aggrieved person may appeal to the Board of Appeals *from a final decision of the Building Official refusing to grant a modification of the*

*provisions of the Basic Code or of this Ordinance.*[7] *Application for appeal may be made when it is claimed that: The true intent of the Basic Code or of this Ordinance has been incorrectly interpreted or applied.* Notice of such appeal shall be in writing. and filed within thirty (30) days after the decision is rendered by the Building Official. [*Id.* § 4-140 (emphasis added).]

Furthermore, the Board of Appeals, in reviewing decisions of the Building Official, is given by the "Ordinance" wide-ranging authority:

The Board of Appeals . . . *may vary the application of any provision of the Basic Code or Ordinance* to any particular case *when,* in its opinion, the *enforcement* thereof *would do manifest injustice,* and/or *would be contrary to the spirit and purpose* of the provisions herein *or the public interest,* or when, in its opinion, the interpretation of the Building Official should be modified or reversed. [*Id.* § 4-141 (emphasis added).]

Primarily raised in the present case is the question of whether the actions of the county here — declaring the building permit void, issuing a stop work order and refusing to grant a new permit (or reissue an amended old one) providing for towers of fewer stories — are to any extent reviewable under this statutory framework, and if so, whether the review procedures outlined above were required to be followed. The county contends that its actions in this case are reviewable by the Board of Appeals because they were based on an interpretation and application of the county building code (including the BOCA Basic Code), and

7. The term "Building Official" refers to the Chief Building Inspector of the Department of Licenses and Permits. Prince George's County Code § 4-103 (1) (1975). The reference to the "Basic Code" is to the Basic Building Code published by the Building Officials and Code Administrators International (BOCA) which was adopted as the building code of the county, *id.* § 4-101; while "this Ordinance" is in reference to subtitle 4 of the county code (and includes as codified all sections whose numbering begins with "4-") entitled "Building", which consists mainly of amendments to the Basic Code.

accordingly, under Md. Code (1957, 1973 Repl. Vol., 1979 Cum. Supp.), Art. 25A, § 5 (U), this appeal procedure was the exclusive remedy. Specifically, Prince George's County points to the fact that the Blumbergs' complaint is that the Chief Building Inspector (Mr. Novak) had no authority to revoke or refuse to reissue the building permit; that the relief sought, aside from damages, is the obtaining of an order directing the reissuance of the permit; and that Mr. Novak acted in the belief that because the Blumbergs had failed to comply with the contractor's license law, and because the WSSC had suspended and then revoked the water and sewer permits, issuance of a building permit was prohibited by section 4-230 of the Prince George's County Code.[8] Thus in the county's view, the Blumbergs' complaint was clearly within the Board of Appeals jurisdiction, since its actions were based on an interpretation and application of the Basic Code and the building subtitle of the county code. Consequently, they argue the legal and factual issues involved were ones which the Board was designed to resolve. The respondents, on the other hand, assert that the Board's review authority is limited to refusals by the Building Official "to grant a modification of the provisions of the Basic Code or of this Ordinance." Prince George's County Code § 4-140 (1975). So, in their view, since what is at issue is not a modification of the building code, but rather a determination that the building permit was void for the alleged failure to comply with applicable county law, as well as whether the county's actions constituted an unlawful interference with a vested property right, there was no administrative remedy to exhaust.[9] Moreover, even if the Board does have jurisdic-

---

**8.** Section 4-230 of the Prince George's County Code (1972) provides in relevant part: "A building permit shall not be issued under the provisions of the Basic Code and of this Subtitle [(the building code)] unless and until there has been full compliance with the applicable requirements contained therein, and with all statutes, ordinances and regulations containing provisions related to and essential to the safety, health, sanitation and welfare of the occupants or future occupants . . . ."

**9.** Respondents also contend that Prince George's County has failed to preserve for appellate review its exhaustion argument because it did not raise the issue by written motion in the trial court as required by Md. Rules 321 and 323. However, since a claim of failure to exhaust administrative remedies is, as our prior decisions make plain, jurisdictional in nature it may be raised at any time, even on appeal. *See* Sec., Dep't of Human Res.

tion, respondents contend that the failure to exhaust this administrative remedy is excused (i) because it would be inadequate and (ii) because of the allegation that there existed a tortious conspiracy to harm them.

The circuit court, as well as the Court of Special Appeals, rejected the county's argument. The trial court ruled that there was no administrative remedy to exhaust because the Board of Appeals was without power to decide the validity of a building permit or to order the Building Official to change his position with regard to the law. Additionally, that court believed that the Blumbergs were entitled to by-pass the Board since they alleged the existence of a conspiracy, sought damages, and because "pursuit of this matter in the administrative area would have been totally fruitless." The Court of Special Appeals affirmed the trial judge's resolution of this issue, although on slightly different grounds. While recognizing that the respondents could have appealed the April 12 determination of Mr. Novak that the permit was "null and void" for failure to obtain a contractor's license, the intermediate appellate court believed that there existed no need for respondents to do so, since the letter annulling the permit indicated that it would be reissued as soon as proof of licensure was established. *Prince George's Co. v. Blumberg,* 44 Md. App. 79, 97-98, 407 A.2d 1151, 1164 (1979). Further, the intermediate appellate court concluded the action of Mr. Novak did not amount to a "final decision of the Building Official refusing to grant a modification of the provisions of the Basic Code or of [Subtitle 4]" because the revocation of the permit had nothing to do with the county building code and "based upon the testimony of Novak and Gullett, it was clearly not Novak's decision, but that of Gullett." *Id.* at 98-99, 407 A.2d at 1164. Finally, the Court of Special Appeals determined that since the county Board of Appeals lacked the authority to order the WSSC to reinstate its water and sewer permits, "an administrative

---

v. Wilson, 286 Md. 639, 645, 409 A.2d 713, 717 (1979); Comm'n on Med. Discipline v. Bendler, 280 Md. 326, 327, 373 A.2d 1232, 1232 (1977); Md. Rule 885. In any event, it is clear from the record that the trial court did address and decide this question.

appeal was essentially worthless." *Id.* at 98, 407 A.2d at 1164. We disagree.

Turning first to the issue of whether an administrative remedy existed with regard to the county's actions, we begin by noting that section 4-140 of the Prince George's County Code, providing for appeals to the Board of Appeals, does not limit the jurisdiction of the Board, as suggested by respondents (and held by the intermediate appellate court), to reviewing only those decisions by the Building Official refusing to grant modifications in the building code. Rather, as the second sentence of section 4-140 makes clear, "[a]pplication for appeal may be made when it is claimed that the true intent of the Basic Code or of this Ordinance *has been incorrectly interpreted or applied.*" (Emphasis added). It seems to us that this language permits appeals by an aggrieved party from all decisions of the Building Official made under the county building code, including his actions with regard to building permits.[10] Throughout this dispute, the Blumbergs have asserted that they have complied with all applicable county laws, that their building permit was thus valid, and that it was illegally revoked. These were clearly claims that the "intent of the Basic Code or of this Ordinance has been incorrectly interpreted or applied," since the Basic Code, as amended by the county, addresses the issuance, suspension and revocation of building permits, as well as when stop work orders, as those here, may be

---

**10.** In this regard we note that if the right of appeal was as narrow as that suggested by respondents, it would have been unnecessary for Prince George's County to amend as they did the suggested appeal provision contained in the BOCA Basic Code which provides:

The owner of a building or structure or any other person may appeal from a decision of the building official refusing to grant a modification of the provisions of the Basic Code covering the manner of construction or materials to be used in the erection, alteration or repair of a building or structure to the board of appeals. Application for appeal may be made when it is claimed that: the true intent of the Basic Code . . . have been incorrectly interpreted, the provisions of the Basic Code do not fully apply, or an equally good or better form of construction can be used. [BOCA Basic Code § 127.1 (5th ed. 1970).] We further note that section 4-141 of the Prince George's County Code (establishing the powers of the Board of Appeals) does not have a counterpart in the BOCA Basic Code.

issued. *See* BOCA Basic Code §§ 114.0-.9; 123.0-.2 (5th ed. 1970); Prince George's County Code §§ 4-112, -113; 4-275.7 (1975); Prince George's County Code § 4-230 (1972). Thus, the Blumbergs could have sought review by the Board of Appeals of Mr. Novak's April 12 decision declaring the permit "null and void" for failure to comply with the building contractor's licensing law; likewise they could have asked the Board to review his supplemental decision of April 19, as well as the Building Official's refusal to reinstate the building permit once the matters mentioned by Mr. Novak in his letters had been resolved. If respondents were still not satisfied, judicial review of the Board's decision by way of appeal was available.

Nor do we agree with the Court of Special Appeals' characterization of these letters as not being final decisions of the Building Official. In the first place, we fail to see how the determination by Mr. Novak that the building permit was "null and void", accompanied by a stop work edict, could indicate anything other than finality. While both letters did mention that if the Blumbergs corrected the alleged violations of the law, the permit, upon resubmission of the application, would be reissued, that did not mean that the ruling, without the required change, was any less final, particularly since here the Blumbergs believed that there was no basis for the position taken by Mr. Novak. Moreover, even if this wasn't a final decision, the failure of Mr. Novak to reissue the permit upon compliance by respondents with the licensure law certainly was. At the same time, the mere fact that the decision by Mr. Novak was influenced or dictated by the County Executive did not make it any less the decision of the Building Official as far as the Blumbergs were concerned. The letters, as well as the stop work order, were signed by Mr. Novak, and thus were decisions by the Building Official for purposes of an administrative appeal. Accordingly, we hold that, with regard to the actions of Prince George's County, the respondents did have an available administrative remedy which they failed to utilize.

Anticipating the conclusion reached here — that an administrative remedy exists for reviewing the actions of

Prince George's County — the Blumbergs next contend that they are excused from exhausting this remedy because the present case falls within one of the exceptions (the fourth) to the exhaustion doctrine already mentioned in this opinion. Specifically, the respondents maintain that an appeal to the County Board of Appeals would not have provided them with an adequate remedy for the grievances alleged because of the inability of the Board to grant relief vis-a-vis the WSSC. In addition, they assert that the Board could not determine whether the actions of the county and the WSSC constituted an unconstitutional taking of private property, nor whether a conspiracy to harm the Blumbergs existed.

While we agree that the county Board of Appeals has no jurisdiction to review the WSSC's actions, *see Board of Appeals v. Marina Apts.,* 272 Md. 691, 699, 326 A.2d 734, 738 (1974), this does not make the appeal to the Board inadequate, or excuse its use, as it concerns the determinations made by the county official. Because of the Board's authority to "vary the application of any provision" of the Prince George's County building code when "injustice" would result, enforcement "would be contrary to . . . the public interest" or "in its opinion, the interpretation of the Building Official should be modified," it could have directed that the Building Official issue a permit to the Blumbergs (assuming it had been properly revoked, a question which also would have been before them) notwithstanding the collateral actions by the WSSC concerning the water and sewer permits. Merely because a builder, such as the Blumbergs, needs the approval of a number of independent agencies in order to construct a building, does not mean that when two or more of these agencies take actions which the applicant believes are wrong the individual can claim that any one administrative remedy is inadequate. An administrative remedy "is not 'inadequate' so as to authorize judicial intervention before exhaustion of the remedy merely because it is attended with delay, expense, annoyance, or even some hardship." *Bennett v. School Dist. of City of Royal Oak,* 10 Mich. App. 265, 159 N.W.2d 245, 247 (1968). Thus, the fact that the Blumbergs would have to utilize whatever

review procedures established by the WSSC (described shortly) in order to challenge its decisions does not relieve them of the obligation to follow the exclusive review procedures of Prince George's County with respect to the Building Official's actions.[11] Accordingly, we hold that there is an adequate administrative remedy which the Blumbergs could, and should, have utilized in addressing their grievance against the county; moreover, this is the procedure which the General Assembly has specifically denominated to be the exclusive available remedy. Md. Code (1957, 1973 Repl. Vol., 1979 Cum. Supp.), Art. 25A, § 5 (U).

We find, likewise, little merit in the other arguments raised by respondents in support of their position that exhaustion was not required. This Court has held on many occasions, when faced with a claim of an agency's unconstitutional taking of property, that such issues must still go through the administrative process, particularly when judicial review is provided. See, e.g., Arnold v. Prince George's Co., 270 Md. 285, 311 A.2d 223 (1973) (change in zoning as unconstitutional taking); Gingell v. County Commissioners, 249 Md. 374, 239 A.2d 903 (1968) (same); Poe v. Baltimore City, 241 Md. 303, 216 A.2d 707 (1966) (same); Bogley v. Barber, 194 Md. 632, 72 A.2d 17 (1950) (vested property right in zoning). And we can see no distinction between those cases and the present one. As to their claim that a conspiracy between the county through its chief administrative officer, the County Executive, and the commission excuses the need to exhaust the administrative process (without deciding whether such can in other

---

11. While not applicable to the present case, we note that in 1975 the General Assembly established "Consolidated Permit Procedures," Md. Code (1957, 1975 Repl. Vol., 1979 Cum. Supp.), Art. 78A, §§ 56-67, for the purpose of "coordinat[ing] administrative decision making by ... consolidating application procedures to assist those persons who must obtain permits from one or more local and State agencies" before undertaking development and construction projects. Id. § 56 (c). These procedures provide for joint hearings and fact-finding, coordinated by the Board of Public Works, in connection with permit applications, id. § 59; however, "[a]dministrative and judicial review of the final action of a local government or State agency on an application for a permit shall be in accordance with the law and procedures governing the issuance of permits by the particular local government or State agency." Id. § 65.

circumstances eliminate the exhaustion requirement), we answer by pointing out that here there is no evidence in the record to implicate the county Board of Appeals (whose membership is, under the Express Powers Act, Md. Code (1957, 1973 Repl. Vol., 1979 Cum. Supp.), Art. 25A, § 5 (U), named by the county council) in the alleged conspiracy or to indicate that the Board would be unable to perform its statutorily prescribed quasi-judicial function impartially.

Having determined that the Blumbergs failed to exhaust their administrative remedy with respect to the actions by Prince George's County, we next examine the suspension and revocation of respondents' water and sewer permits by petitioner WSSC. Although not raised by the agency, we find that the respondents' suit against it is also barred for the failure of the Blumbergs to utilize the administrative remedy provided for the redress of WSSC actions. Accordingly, we will direct that this suit against the WSSC likewise be dismissed. *See Sec., Dept. of Human Res. v. Wilson,* 286 Md. 639, 643-45, 409 A.2d 713, 716-17 (1979) (being jurisdictional, court may raise failure to exhaust administrative remedies on own motion).

The Washington Suburban Sanitary Commission, as a body corporate organized under the laws of the State of Maryland, is, as this Court recently held, an agency of the State, even though it operates principally in Prince George's and Montgomery Counties. *Katz v. Washington Sub. San. Comm'n,* 284 Md. 503, 509-12, 397 A.2d 1027, 1031-32 (1979). As a State agency, its procedures are governed by the Administrative Procedures Act (APA), Md. Code (1957, 1978 Repl. Vol., 1979 Cum. Supp.), Art. 41, §§ 244-256A, which provides specifically for the manner in which the actions of agencies subject to the Act's provisions may be reviewed. The APA's review section, *id.* § 255, provides that "[a]ny party aggrieved by a final decision in a contested case . . . is entitled to judicial review . . ." in the circuit court or the Baltimore City Court as the case may be. Once an agency has reached a "final decision" (*i.e.,* all steps of the agency's internal review procedures have been utilized, *see Leatherbury v. Gaylord Fuel Corp.,* 276 Md. 367, 373-74, 347 A.2d 826, 830-31 (1975)) "in a contested case", then section

255's provisions take effect and must be followed, for as we stated earlier: "if [a person] is unsuccessful [before an agency] and wishes aid from the courts, he must take judicial appeals in the manner the legislature has specified rather than by seeking to invoke the ordinary general jurisdiction of the courts." *Agrarian, Inc. v. Zoning Inspector,* 262 Md. 329, 332, 277 A.2d 591, 592 (1971). Thus, if the action of the WSSC in suspending and later revoking the water and sewer permits of the Blumbergs was a "final decision in a contested case", then respondents must have *appealed* that decision to the Circuit Court for Prince George's County, and the failure to do so precludes review by way of an independent court suit.

Assuming for purposes of the present case that the decision by the full Commission was "final" and that no other administrative review was required, we must then determine if the WSSC's action was in a "contested case." If it was, then court review must be by way of appeal; if not, then an independent court suit, such as that here, may be proper. *See State Dep't of A. & Tax. v. Clark,* 281 Md. 385, 399-400, 380 A.2d 28, 36-37 (1977). A "contested case" is defined in the APA as "a proceeding before an agency in which the legal rights, duties, statutory entitlements, or privileges of specific parties are required by law or constitutional right to be determined after an agency hearing." Ordinarily, unless otherwise required by statute, "the necessity of a hearing in an administrative proceeding depends on the character of the proceeding and the nature of the interest of the person seeking relief." *Eliason v. State Roads Comm.,* 231 Md. 257, 260, 189 A.2d 649, 651, *cert. denied,* 375 U.S. 914 (1963). "[W]here a public administrative body acts in a judicial or *quasi*-judicial matter, and its acts are particular and immediate rather than general and prospective, the person whose rights or property may be affected by the action is entitled to notice and hearing." *Albert v. Pub. Serv. Commission,* 209 Md. 27, 37-38, 120 A.2d 346, 350-51 (1956). *See Murray v. Dep't of Soc. Services,* 260 Md. 323, 326-27, 272 A.2d 16, 18 (1971); *Mandel v. Bd. of County Comm'rs,* 238 Md. 208, 216, 208 A.2d 710, 715 (1965). In the present case, there are no

statutory provisions requiring the WSSC to hold hearings on the refusal to issue or revoke water and sewer permits; nor were there, at the time of the agency's actions here, any rules or regulations by the WSSC providing for a hearing right.[12] In fact, the commission did in this case provide respondents with a hearing before revoking the permits. We hold that the judicial review provisions of the APA were applicable, *see Murray v. Dep't of Soc. Services, supra,* and since the Blumbergs did not appeal the commission's decision, they failed to exhaust their administrative remedies. Accordingly, the circuit court should have dismissed the present action against that State agency.

The final matter which we address in the present case is the contention raised by the Blumbergs in their cross-petition that the bill of complaint, as amended, did state a cause of action against former county executives Gullett and Kelley, that it was therefore error to dismiss them from the suit and the trial court, in so dismissing these officials, abused its discretion in not granting the Blumbergs leave to amend their complaint. We have carefully read both the original and amended bills and find that we agree with Judge Wilner's assessment of them for the Court of Special Appeals as they pertain to these defendants. With respect to Gullett, "the only *specific* complaint against [him] that smacks of an excess of authority was that he refused to reissue the [building] permit", *Prince George's Co. v. Blumberg, supra,* 44 Md. App. at 103, 407 A.2d at 1167; and as to Kelley that court noted that "[e]xcept to name him as the then current County Executive, the amended bill made no allegations whatsoever against Kelley." *Id.* Consequently, the circuit court was not in error when it dismissed the suit against Gullett and Kelley. Moreover, we do not find, as required by our prior decisions, a clear showing of an abuse of discretion on the part of the trial court in refusing to allow the Blumbergs a third opportunity

12. Effective March 3, 1979, the WSSC adopted regulations providing, as a matter of right, for an adjudicatory hearing before a "hearing officer" whenever an individual's "legal rights, duties, or privileges are adversely affected by a decision of the Commission." 6 Md. Register 463 (1979). The regulations also provide for review of the hearing officer's decision by appeal to the full commission.

in which to state a cause of action against the former executives. *See, e.g., Crowe v. Houseworth,* 272 Md. 481, 489, 325 A.2d 592, 597 (1974); *Perlmutter v. Minskoff,* 196 Md. 99, 112, 75 A.2d 129, 135 (1950). Two voluminous bills of complaint have already been filed in this case, and we have not been convinced by any proffer on the part of the Blumbergs that a third one would alleviate the defect in the other two. Accordingly, we affirm the dismissal of Kelley and Gullett from the case.

> *Judgment of the Court of Special Appeals as it pertains to Prince George's County and the Washington Suburban Sanitary Commission reversed and case remanded to that court with instructions to reverse the judgment entered in the Circuit Court for Prince George's County against those two defendants without a new trial.*
> *Judgment of the Court of Special Appeals as to William W. Gullett and Winfield M. Kelley, Jr., affirmed.*
> *Costs to be paid by Marvin and Herschel Blumberg.*