567 A.2d 503

Michael O. MAGAN et al.

v.

MEDICAL MUTUAL LIABILITY INSURANCE SOCIETY OF MARYLAND, et al.

No. 709, Sept. Term, 1989.

Court of Special Appeals of Maryland.

Dec. 28, 1989.

302

Barry S. Brown (Edward J. Birrane, Jr. and Birrane, Harlan, Sharretts & Cooke, on the brief), Baltimore, for appellants.

David M. Funk (Bryan D. Bolton and Shapiro and Olander, on the brief), Baltimore, for appellee Medical Mut.

Benson E. Legg and Venable, Baetjer & Howard, on the brief, Baltimore, for appellees Individually Named Officers and Directors.

Argued before ROSALYN B. BELL, KARWACKI and CATHELL, JJ.

ROSALYN B. BELL, Judge.

■ This case presents the question of whether an individual aggrieved by an insurer's violation of Md.Code Ann. Art. 48A (1957, 1986 Repl.Vol., 1989 Cum.Supp.), (Maryland Insurance Code) can maintain, in addition to the statutory remedy, a tort action for damages in the circuit court based upon the same issues advanced in the administrative proceedings. We hold that the individual is limited to the remedy provided in the Maryland Insurance Code. Before we explain our answer, we will first discuss how this issue arose.[1]

In August of 1985, Dr. Michael O. Magan applied to Medical Mutual Liability Society of Maryland for malpractice insurance coverage for his obstetric and gynecology practice. Medical Mutual, however, refused to issue a policy, citing three claims against Dr. Magan in 1979 and 1980. Dr. Magan filed a complaint with the Insurance Commissioner (Commissioner), alleging that Medical Mutual was required to provide him insurance coverage and its

---

1. For a more detailed discussion of the events which preceded the instant appeal, *see Muhl v. Magan,* 313 Md. 462, 545 A.2d 1321 (1988).

refusal violated the Maryland Insurance Code, Md.Code Ann. Art. 48A, § 234A (1957, 1986 Repl.Vol., 1989 Cum. Supp.).[2]

In November of 1985, Dr. Magan requested a hearing before the Commissioner pursuant to Md.Code Ann. Art. 48A, § 35(2) (1957, 1986 Repl.Vol.). When the Commissioner failed to grant a hearing within 30 days pursuant to § 35(3), Dr. Magan appealed the failure to grant a hearing to the Circuit Court for Baltimore City. The trial judge found in favor of Dr. Magan and remanded the matter to the Commissioner for the purpose of ordering Medical Mutual to issue a policy of professional medical liability insurance to Dr. Magan. Medical Mutual and the Commissioner appealed the trial court's decision and we affirmed. *Medical Mutual Liability Ins. Society of Md. v. Magan*, 72 Md.App. 330, 529 A.2d 841 (1987).

The Court of Appeals granted certiorari, vacated our decision and remanded the case to the Commissioner for a hearing. *Muhl v. Magan*, 313 Md. 462, 545 A.2d 1321 (1988). In so holding, that Court stated that the trial court should have confined its inquiry to the issue of Dr. Magan's entitlement to a preliminary hearing before the Commissioner and should not have decided the merits of the case before administrative remedies were exhausted. *Muhl*, 313 Md. at 479–80, 545 A.2d 1321.

In November of 1988, a hearing was held before an examiner of the State insurance division. The purpose of the hearing was to determine whether Dr. Magan's complaint was moot since Medical Mutual had since provided

---

**2.** Section 234A(a) provides in pertinent part:
"No insurer ... shall ... refuse to underwrite ... a particular insurance risk ... for any reason based in whole or in part upon race, color, creed, sex, or blindness of an applicant or policyholder or for any arbitrary, capricious, or unfairly discriminatory reason.... No insurer ... may cancel or refuse to underwrite or renew a particular insurance risk or class of risk except by the application of standards which are reasonably related to the insurer's economic and business purposes."

insurance coverage to him. The Commissioner subsequently approved the recommendations of the hearing examiner which stated that Medical Mutual's refusal to issue a policy was moot since a policy was issued and still in force at the time of the hearing. The hearing examiner further recommended that the Commissioner grant Dr. Magan a hearing on whether Medical Mutual violated § 234A and whether restitution should be ordered pursuant to Md.Code Ann. Art. 48A, § 55A (1957, 1986 Repl.Vol.).[3] A hearing was scheduled for April 17–19, 1989.

In August of 1988, while Medical Mutual's appeal was pending before the Court of Appeals, Dr. Magan and his wife, Mary Ann Magan,[4] filed a complaint in the Circuit Court for Baltimore City against Medical Mutual and its officers and directors which is the subject of the instant case. In his complaint, Dr. Magan alleged that (1) Medical Mutual had breached its duty to insure licensed physicians in Maryland by denying his application for insurance; and (2) Medical Mutual had intentionally violated the trial court's order to insure Dr. Magan at standard rates by seeking to impose a surcharge on him. The complaint sought compensatory and punitive damages.

The trial court dismissed the complaint on the basis that Dr. Magan had failed to exhaust his administrative remedies and thus the trial court lacked subject matter jurisdiction. It is from this decision that Dr. Magan appeals. Since we hold that the trial judge properly dismissed the complaint, we do not address Dr. Magan's allegations that

---

3. Section 55A provides:

   "In lieu of or in addition to revocation or suspension of an insurer's certificate of authority the Commissioner may (1) impose a penalty of not less than one hundred dollars ($100) or more than fifty thousand dollars ($50,000) for each violation of this article on any insurer whose certificate of authority is subject to revocation or suspension under the provisions of this article, and (2) require that restitution be made by such insurer to any person who has suffered financial injury or damage as a result of such violation."

4. Since Mrs. Magan's claim is purely derivative, we will only refer to appellant Dr. Magan in our discussion.

Medical Mutual breached its duty to insure him and intentionally violated a court order by seeking to impose a surcharge.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

Generally, the rule in Maryland is that, where a statute provides a special form of remedy, the complainant must use that form and must not bypass the administrative body by pursuing other remedies. *Prince George's County v. Blumberg*, 288 Md. 275, 284, 418 A.2d 1155 (1980), *cert. denied*, 449 U.S. 1083, 101 S.Ct. 869, 66 L.Ed.2d 808 (1981). There are, however, recognized exceptions to the administrative exhaustion of remedies rule. Those generally cited are:

"1.  When the legislative body has indicated an intention that exhaustion of administrative remedies was not a precondition to the institution of normal judicial action.

"2.  When there is a direct attack, constitutional or otherwise, upon the power or authority (including whether it was validly enacted) of the legislative body to pass the legislation from which relief is sought, as contrasted with a constitutional or other type issue that goes to the application of a general statute to a particular situation.

"3.  When an agency requires a party to follow, in a manner and to a degree that is significant, an unauthorized procedure.

"4.  Where the administrative agency cannot provide to any substantial degree a remedy.

"5.  When the object of, as well as the issues presented by, a judicial proceeding only tangentially or incidentally concern matters which the administrative agency was legislatively created to solve, and do not, in any meaningful way, call for or involve applications of its expertise."

*Blumberg*, 288 Md. at 284–85, 418 A.2d 1155 (citations omitted).

In *Secretary, Maryland Department of Human Resources v. Wilson*, 286 Md. 639, 409 A.2d 713 (1979), the

Court of Appeals explained the public policy behind the exhaustion of administrative remedies rule. The Court said:

> "Thus, this Court recognized that when the Legislature enacts a comprehensive remedial scheme in which a claim is to be determined by an administrative agency and reviewed in an administrative appeal before judicial review is available, it establishes, as public policy, that such a procedure produces the most efficient and effective results. In order to effectuate this public policy, trial courts generally should not act until there has been compliance with the statutory comprehensive remedial scheme."

*Wilson,* 286 Md. at 645, 409 A.2d 713 (citations omitted).

In the instant case, the complaint, filed in the circuit court, was grounded upon Medical Mutual's refusal to underwrite Magan, an alleged violation of the Maryland Insurance Code.[5] The Insurance Code provides a comprehensive administrative structure and establishes a uniform method of appeal for an individual aggrieved by an insurer's violation of the Maryland Insurance Code, Md.Code Ann. Art. 48A (1957, 1986 Repl.Vol., 1989 Cum.Supp.).

Article 48A, § 24 deals specifically with the powers and duties of the Commissioner. Under § 24(3), the Commissioner may conduct an investigation to determine whether an insurance company is acting in compliance with the Maryland Insurance Code. As part of this investigation, § 27 empowers the Commissioner to subpoena witnesses, administer oaths and compel production of evidence. The Commissioner may conduct a hearing on the matter upon the written demand by an aggrieved person. § 35(2). If

---

**5.** Counts I through XIV of the tort claim allege that Medical Mutual must insure all physicians licensed in Maryland and that the refusal to underwrite Magan's professional liability insurance violated Md.Code Ann. Art. 48A, § 548 (1957, 1986 Repl.Vol.). Counts XV through XXVII of the complaint allege that Medical Mutual violated a court order issued on appeal from an administrative proceeding for an alleged violation of § 234A.

the Commissioner finds that a violation of Art. 48A has occurred, the Commissioner may revoke or suspend the insurer's license to do business in Maryland. § 55. In lieu of or in addition to this remedy, the Commissioner may impose a penalty of up to $50,000 for each violation and require that restitution be made by the insurer to any person who has suffered financial injury or damage as a result of the violation. § 55A. A party who is not satisfied with the results of the hearing before the Commissioner may appeal to the circuit court. § 40(1). On review, the circuit court conducts a *de novo* hearing and must consider the evidence in the record together with any additional evidence as may be offered by any party to the appeal. § 40(4). An appeal from a judgment of the circuit court to this Court by the aggrieved party is provided in § 40(7).

Here, Magan attempts to circumvent these administrative procedures by pursuing a separate claim for damages in the circuit court. Magan maintains that he can do this because his claim sounds in tort. This argument fails, however, since the factual predicate for his tort claims is founded on a statutory violation which carries with it a statutory remedy. In essence, what Magan is attempting to do is supplement his statutory remedy for damages by pursuing an action for tort damages in the circuit court. In order for Magan to maintain a separate action in the circuit court, he must pursue a recognized alternate remedy under common law principles. *See White v. Prince George's County*, 282 Md. 641, 650–51, 387 A.2d 260 (1978).

■ With respect to the instant case, no common law cause of action exists to recover damages for an insurer's refusal to underwrite an insured. *Edelstein v. Nationwide Mutual Ins. Co.*, 252 Md. 455, 461, 250 A.2d 241 (1969) (an insurance company has the unqualified right to select the risks it considers profitable to insure and the company is under no obligation to accept an application written by its agent or broker); *American Casualty Co. v. Ricas*, 179 Md. 627, 634, 22 A.2d 484 (1941) (insurances companies are not compelled to accept every application presented). Since

the only underwriting obligation that exists is statutory, Magan's remedy is limited to § 55A. The resolution of the damages issue under § 55A is now pending before the Commissioner. Magan cannot also maintain an action for damages based on the same violation in a different forum. Here, the statute provides a remedy and a procedure to follow. Thus, Magan must await the exhaustion of these remedies and, if he is unsuccessful, he may exercise the right to appeal the administrative action.

Magan further contends that § 55A is not an exclusive remedy since it is overly broad and vague and does not set out a precise mechanism to litigate tort claim damages flowing from violations of the Maryland Insurance Code. Magan claims that ordinarily statutory remedies which are treated as exclusive contain precise mechanisms to follow when a statute is violated. Thus, Magan concludes, by passing broad legislation, the Legislature did not intend § 55A to be an exclusive remedy.

In determining whether the Legislature intended the remedy provided by the Maryland Insurance Code to be exclusive, we must keep in mind that "it is a settled principle of statutory construction that, absent a legislative indication to the contrary, it will usually be deemed that the Legislature intended the special statutory remedy to be exclusive." *White v. Prince George's County*, 282 Md. 641, 649, 387 A.2d 260 (1978) (citations omitted).

Here, the administrative and judicial review provided for by the Maryland Insurance Code does not contain any statement or expression of legislative intent that § 55A is intended to be anything other than exclusive. In fact, when a specific statutory remedy is provided, that remedy is usually deemed exclusive. *DuBois v. City of College Park*, 280 Md. 525, 533, 375 A.2d 1098 (1977). Here, the Maryland Insurance Code sets up a comprehensive administrative structure, provides a remedy and establishes a uniform method of appeal for an aggrieved party. Accordingly, we hold that the Legislature intended § 55A to be an exclusive remedy.

Magan advances other arguments in support of his position that he does not have to exhaust his administrative remedies. Although we do not find any of these arguments persuasive, we briefly address them.

—*Blumberg* Exception No. 4—

■ Magan's argument that he may not be able to recover in the administrative proceeding all of the damages claimed in his complaint is without merit. An administrative remedy is not inadequate so as to authorize judicial intervention before exhaustion of the remedy simply because it may create some hardship or does not give one everything he or she wants. *Blumberg*, 288 Md. at 292, 418 A.2d 1155. Administrative remedies are available and Magan cannot bootstrap a cause of action by simply asserting a tort claim and thereby claim that the administrative remedy is inadequate. *See Bronstein v. Sheppard*, 50 Pa.Cmwlth. 199, 412 A.2d 672, 674 (1980). Magan must await the exhaustion of these remedies and, if he is unsuccessful, he may exercise his right to appeal the administrative action.

—Bad Faith Analogy—

Magan also contends that, since an insured can maintain an action in the courts for bad faith failure to pay an insurance claim, he should likewise be permitted to maintain an action for damages without resorting to § 55A. As support for this argument, he relies on *State Farm Mutual Automobile Insurance Co. v. White*, 248 Md. 324, 236 A.2d 269 (1967), and *Sweeten v. National Mutual Insurance Co. of D.C.*, 233 Md. 52, 194 A.2d 817 (1963). In both *White* and *Sweeten*, however, the insurers had contracts of insurance with the plaintiffs and had agreed to assume the defense of claims pursuant to those contracts. The gravamen of Magan's basic claim was the failure of Medical Mutual to provide insurance in the first instance. Moreover, the plaintiffs in *White* and *Sweeten* based their claims on a bad faith failure to settle an insurance claim which is predicated on a common law fiduciary relationship between the insured and

the insurer. *White,* 248 Md. at 329, 236 A.2d 269; *Sweeten,* 233 Md. at 55, 194 A.2d 817. As previously mentioned, no common law claim exists for failure to write insurance. Accordingly, Magan's analogy to *White* and *Sweeten* is not applicable and therefore without merit.

—Concurrent Jurisdiction—

█ Penultimately, Magan asserts that the court's jurisdiction is concurrent with that of the Commissioner. Magan cites *Maryland–National Capital Park and Planning Commission v. Washington National Arena,* 282 Md. 588, 386 A.2d 1216 (1978), and *Southern Maryland Electric Cooperative, Inc. v. Travelers Insurance Co.,* 52 Md.App. 140, 447 A.2d 487, *cert. denied,* 294 Md. 545 (1982), in support of his argument for concurrent jurisdiction.

In *Washington National Arena,* the Court of Appeals found the the Legislature did not intend to endow the tax appeal tribunals with exclusive authority to determine the validity of a noncontestablility clause of a lease agreement. The Court stated that the validity of the clause was relevant to the question of Washington Arena's standing to institute an administrative appeal and, to this extent, the tax tribunals would have had incidental power to determine the validity of the clause. The Court concluded that this did not deprive the circuit court of the authority to adjudicate the question of contract construction, a point of law it could otherwise decide. *Washington National Arena,* 282 Md. at 598–99, 386 A.2d 1216.

In *Southern Maryland Electric,* (SMECO), SMECO filed a complaint with the Commissioner, alleging that Travelers Insurance Company had refused to pay SMECO employees the cash surrender value under the "paid-up" provisions of the group policy after termination of the policy. The dispute involved the validity and interpretation of the insurance contract. We affirmed the circuit court's finding in favor of Travelers. In a footnote at the conclusion of the opinion, we indicated that, because of the conclusions reached, it was unnecessary to address the question of the

Commissioner's authority. *Southern Md. Electric,* 52 Md. App. at 149, n. 4, 447 A.2d 487. Thus, any reliance on this case for concurrent jurisdiction is misplaced. Any reliance on this case is also inappropriate because Magan's basic complaint does not request a judicial interpretation or declaration of rights pursuant to a contract. Moreover, the plaintiffs in both cases raised issues arising at common law. Here, as previously mentioned, no common law remedy for failure to underwrite professional liability insurance exists.

As stated in *Muhl,* 313 Md. at 480, 545 A.2d 1321:
"Here, Dr. Magan had no contract with Medical Mutual. His objective is to have Medical Mutual compelled to enter into a contract with him, a form of relief generally unknown to the common law. *The remedy which the General Assembly has created for situations involving insurers who decline to accept a particular risk lies under § 234A and related provisions* and is enforced through the procedures applicable to that type of unfair trade practice under the Insurance Code." (Emphasis added.)

Likewise, Magan's remedy for damages lies within the exclusive jurisdiction of the Commissioner.

## STAY PENDING EXHAUSTION OF REMEDIES

Instead of dismissing, Magan contends that the trial judge should have stayed action on his complaint, pending the exhaustion of administrative remedies. Magan relies on *McCullough v. Wittner,* 314 Md. 602, 552 A.2d 881 (1989), and *Maryland–National Capital Park & Planning Commission v. Crawford,* 307 Md. 1, 511 A.2d 1079 (1986), in support of his contentions. *McCullough* involved an inmate who had brought a common law tort action for assault and battery against a correctional officer. The officer moved to dismiss for failure to exhaust administrative remedies before the Inmate Grievance Commission. The Court of Appeals held that the inmate was required to exhaust his administrative remedy but it explained that dismissal of the

inmate's complaint (common law tort of assault and battery) was error. The Court said:

"Under circumstances like these, where a plaintiff has both an administrative remedy and an independent judicial action, and the administrative agency's jurisdiction is deemed primary, it is appropriate for the trial court to retain, for a reasonable period of time, jurisdiction over the independent judicial action pending invocation and exhaustion of the administrative procedures."

*McCullough*, 314 Md. at 613, 552 A.2d 881.

Similarly, in *Crawford*, the plaintiff maintained a cause of action under 42 U.S.C. § 1983 in addition to remedies provided under Title VII of the 1964 Civil Rights Act. The Court of Appeals stated that nothing in Title VII suggests that it was intended to affect remedies available under § 1983. *Crawford*, 307 Md. at 20, 511 A.2d 1079.

Again, Magan relies on cases where an independent cause of action existed in addition to a statutory right. As previously discussed, in the absence of an independent common law cause of action in the instant case giving rise to concurrent jurisdiction, it would have been inappropriate to issue a stay pending Magan's exhaustion of administrative remedies. Medical Mutual's underwriting obligations are statutorily created and remedies for violations thereof must in the first instance be pursued with the Commissioner. Since Magan's statutory remedy is still being pursued before the Commissioner, he must await the outcome and, if unsuccessful, then the appropriate action is to appeal. Magan's attempt to supplement this process by filing a complaint in the circuit court is, as previously explained, a ploy to try the case twice and presumably appeal twice. Hence, dismissal was proper.

In view of our holding that the circuit court lacked all subject matter jurisdiction and hence dismissal was proper, we need not address Magan's claim that his complaint states a valid cause of action.

# 314

JUDGMENT AFFIRMED.

COSTS TO BE PAID BY APPELLANT.