614 A.2d 1318

**Gerald R. VEYDT**

v.

**LINCOLN NATIONAL LIFE INSURANCE COMPANY.**

**No. 122, Sept. Term, 1992.**

Court of Special Appeals of Maryland.

Nov. 2, 1992.

2

Edward J. Birrane, Jr. (Birrane, Harlan & Brattan, on the brief), Baltimore, for appellant.

Bryan D. Bolton (Stewart P. Hoover and Shapiro and Olander, on the brief), Baltimore, for appellee.

Argued before ALPERT, WENNER and CATHELL, JJ.

CATHELL, Judge.

Appellant, Gerald R. Veydt (Veydt), appeals the granting of a motion to dismiss filed by Lincoln National Life Insurance Company (Lincoln National), appellee. The

case arises out of appellee's termination of an agency contract between the parties and the subsequent notification to policyholders by appellee that the agency relationship had been terminated and that the insureds had the right to continue coverage under appellee's policies. Appellant's complaint, alleged in Count I, "False Light" and in Count II, "Tortious Interference with Business Relationships." [1]

---

1. In the complaint below, appellant noted that there was an ongoing dispute between the parties over coverage arising out of a policy in which Veydt was the policyholder. The complaint in this case, however, does not concern itself with that policy or that issue, and no breach of contract claim based upon that contract of insurance is made in this case. In this complaint, appellant does allege that appellee's actions in terminating his at-will agency agreement arose out of its dissatisfaction with the negotiations concerning that policy conflict. Veydt's complaint then identifies appellee's actions that give rise to the torts of "False Light" and "Tortious Interference with Business Relationships" as "letters to all Veydt's clients." The primary letter is identified in the complaint as Exhibit A, which is the letter we shall later describe. In his complaint, he also makes reference to a document attached thereto as Exhibit B in support of his contentions. On its face, Exhibit B is an interdepartmental memo from the Law Division of Lincoln National to the Governmental Relations Department of Lincoln National in which the Law Department tells the Governmental Relations Department the status of the matters concerning Veydt.

   The tort of false light is a type of an invasion of privacy. We stated in *Allen v. Bethlehem Steel Corp.*, 76 Md.App. 642, 648, 547 A.2d 1105, *cert. denied*, 314 Md. 458, 550 A.2d 1168 (1988), that it "requires a *publication* which unreasonably places the plaintiff in a false light *before the public.*" (Emphasis added.) *See also Hollander v. Lubow*, 277 Md. 47, 53–60, 351 A.2d 421, *cert. denied*, 426 U.S. 936, 96 S.Ct. 2651, 49 L.Ed.2d 388 (1976); *Klipa v. Board of Educ.*, 54 Md.App. 644, 655, 460 A.2d 601, *cert. denied*, 297 Md. 109 (1983) (stating that the tort of false light invasion of privacy required "publicity"). The Court of Appeals in *Hollander* stated: "The disclosure of the private facts must be a public disclosure, and not a private one; there must be, in other words, publicity...." *Hollander*, 277 Md. at 57, 351 A.2d 421 (quoting *Restatement (Second) of Torts*). As previously stated, the document, Exhibit B, attached to appellant's complaint below was an interdepartmental memo; it was Lincoln's communication to itself. It gives rise to neither the tort of false light nor tortious interference with business relations. A party cannot tortiously interfere with his own business relationship in any event. *Travelers, infra.*

   To the extent that the interdepartmental memo was furnished to the Commission upon its request, the Maryland Annotated Code Article

The Court of Appeals has stated that the substance of a pleading and not its title, determines the cause of action:

> Ordinarily, "magic words" are not essential to successful pleading in Maryland. Courts and administrative agencies are expected to look at the substance of the allegations before them, not merely at labels or conclusory averments. "[O]ur concern is with the nature of the *issues* legitimately raised by the pleadings, and not with the labels given to the pleadings." [Citations omitted.]

*Alitalia v. Tornillo,* 320 Md. 192, 195–96, 577 A.2d 34 (1990).

In a comprehensive and well-reasoned opinion, Judge Davis, of the Circuit Court for Baltimore City, dismissed appellant's claim in the case *sub judice,* essentially finding that the statutory remedy contained in Maryland Annotated Code article 48A, sections 234B and 55A (1991), created an exclusive remedy for the redress of appellant's complaints. His reasoning is hard to improve upon, we therefore include it here:

> The verbal [written] communications, which form the predicate for Veydt's claims, are so intricately bound up with the act of termination ... that they cannot be made the basis for a separate tort claim....
>
> ....
>
> If a common law tort claim may be asserted on the basis of verbal acts forming a necessary and appropriate part of the process of [agency] contract termination, as regulated under sec. 234B(d), then that subsection would have no vitality whatsoever....

48A, Section 32(2) (1991), mandates that the insurer "shall produce ... the ... records ... documents ... information ... in his ... control relating to the subject of the examination...." At the time at issue, Veydt had filed complaints with the Commission both as to the treatment of the policy matters and the termination of the agency agreement. Producing for examination the records it was required to furnish under the statute for the purpose of an administrative agency proceeding, is not, as we see it, especially under the circumstances of this case, the affording of publicity to a private matter. We decline to address the interoffice communication further.

. . . .

It is difficult to imagine how the Commissioner's legislatively-created primary jurisdiction over terminations that are "arbitrary, capricious, unfair or discriminatory" would survive the artful pleading of skillful advocates. Here, the amended complaint's heavy reliance upon Lincoln's *communications* does not obscure the reality that Lincoln's act (of contract termination) is the gravamen of the alleged harm.

In *Magan v. Medical Mutual Liability Insurance Society*, 81 Md.App. 301, 303, 567 A.2d 503 (1989), we held that an individual cannot maintain, in addition to the statutory remedy, a tort action for damages in circuit court based upon the same issues advanced or that should have been advanced in the administrative proceedings.[2]

As indicated, we agree with the trial judge. We explain further.

The Statutory Provisions

Article 48A, section 234B was enacted by Chapter 417 of the Laws of 1970. Its stated purpose was to "establish

---

**2.** The appellant in the case at bar also filed a complaint with the Insurance Division alleging that the termination of the agency agreement was improper because of failure to comply with the 90–day notice provision found in the Annotated Code of Maryland, Article 48A, section 234B(b) (1991). The Insurance Commission found that Lincoln National had violated the pertinent statutory provisions and ordered the reinstatement of the agency agreement. The circuit court reversed the Commission's ruling finding that the 90–day provision did not apply to agency agreements with respect to the types of insurance in the case at bar. We subsequently reversed the trial court holding that the Commission's construction of the statute was correct. *Insurance Comm'r v. Lincoln Nat'l Life Ins. Corp.*, 89 Md.App. 114, 597 A.2d 992 (1991). The Court of Appeals reversed holding that the Commission's construction of the statute was wrong and directed us to affirm the judgment of the Circuit Court for Baltimore City. *Lincoln Nat'l Life Ins. Co. v. Insurance Comm'r*, 328 Md. 65, 612 A.2d 1301 (1992). Therefore, at this stage of the proceedings, the only administrative complaint filed by appellant has been resolved in favor of appellee. To the extent issues were presented or should have been presented to the administrative agency, the conduct of appellee in the termination of the agency agreement has been determined not to be wrongful.

standards of fairness in . . . [the] treatment of agents" and to confer authority on the Insurance Commissioner "to remedy failure to observe such standards." Section 234B prohibits any insurer from cancelling or amending a written agreement with an agent *"if the cancellation . . . is arbitrary, capricious, unfair."* (Emphasis added.) It would be hard to find a clearer statement of legislative purpose than that contained in Chapter 417.

Maryland Annotated Code article 48A, section 55A, is the penalty provision of the Insurance Code. By Chapter 755 of the Laws of 1971, the Legislature reiterated its intention that the Commissioner be fully charged with the responsibility to remedy violations of Article 48A when it increased the maximum penalty the Commissioner can impose from $25,000 to $50,000 and, more important, added to section 55A provisions authorizing the Commissioner to *"require that restitution be made by such insurer to any person who has suffered financial injury or damage as a result of such violation."* (Emphasis added.)

The Court of Appeals has stated one of the principles of statutory construction as:

Where, as here, two statutes deal with the same subject matter and are not inconsistent . . . they must be construed together and, to the extent possible, full effect given to each. . . .

. . . Unless the intention of the legislature is clearly otherwise, "the requirements of one will be construed as embodying the provisions of the other." [Citations omitted.]

*Commission on Medical Discipline v. Bendler,* 280 Md. 326, 330, 373 A.2d 1232 (1977). *See also Taxiera v. Malkus,* 320 Md. 471, 480–81, 578 A.2d 761 (1990) ("Words in a statute must, therefore, be read in a way that advances the legislative policy involved. . . . [t]he courts strongly favor a harmonious interpretation in construing the related statutes which gives full effect to both . . ."); *Kaczorowski v. Mayor and City of Baltimore,* 309 Md. 505, 511, 525 A.2d 628 (1987). We shall later construe sections 234B and 55A in

light of the facts in the case at bar. First, however, we shall discuss the general law of agency and the doctrine of apparent authority.

### The Letter to the Insured

■ Appellee proffers in its brief that if it had not notified its policyholders that appellant was no longer its agent, it might have incurred liability for Mr. Veydt's actions after cancellation. We agree. The doctrine of apparent authority is well settled in Maryland. The Court of Appeals in *Reserve Insurance Company v. Duckett*, 240 Md. 591, 600–01, 214 A.2d 754 (1965), has stated that this doctrine is applicable to insurance companies:

> The doctrine is stated succinctly in *Hobdey v. Wilkinson*, [201 Md. 517, 526, 94 A.2d 625 (1953)] as follows: "One who knowingly permits another to act for him as though authorized, inducing third persons to rely to their disadvantage on the seeming authority, is estopped from later asserting the lack of authority of his apparent agent."

> ... [T]he doctrine of either apparent authority or estoppel can be applied, in an appropriate case, even where authority to bind an insurance company is involved. *Taylor v. United States Casualty Co.* (S.C.) [229 S.C. 230], 92 S.E.2d 647, 652 [ (1956) ]. That this is true in Maryland is either held or indicated in *Hankins v. Pub. Ser. Mutual Ins. Co.*, [192 Md. 68, 79–82, 63 A.2d 606 (1949) ]; *American Casualty Co. v. Ricas*, [179 Md. 627, 631–34, 22 A.2d 484 (1941) ] and *Trust Co. v. Subscribers, Etc.*, [150 Md. 470, 475–76, 133 A. 319 (1926) ].

Similarly, we said in *Progressive Casualty Insurance Co. v. Ehrhardt*, 69 Md.App. 431, 441, 518 A.2d 151 (1986):

> Specifically, the principal becomes responsible for the agent's actions when the principal's conduct, either affirmative acts or the failure to take corrective steps, has clothed an agent with apparent authority and thereby induces a third party to rely to his detriment.

Furthermore, under general agency law, the responsibility of the principal to third persons extends and binds the principal when the agent is "held out ... to the other party, as having competent authority, although, in fact, he has, in the particular instance ... acted without authority." *Parker v. Junior Press Printing Serv., Inc.*, 266 Md. 721, 728, 296 A.2d 377 (1972) (quoting *Wailes and Edwards, Inc. v. Bock*, 265 Md. 274, 289, 289 A.2d 297 (1972)).

In the present case, prior to termination, appellant was appellee's agent and was permitted to procure and service policies. Until such time as appellee notified its policyholders that appellant was no longer its agent, it had held appellant out as appellee's agent for the purpose of procuring and servicing the policies in question. Notwithstanding the fact that appellant's actual authority was terminated, absent some notification, apparent authority *might* still exist as to those policyholders without actual knowledge of the termination. *See Insurance Management of Washington, Inc. v. Eno & Howard Plumbing Corp.*, 348 A.2d 310, 312 (D.C.1975). The letters, *restrained as they were in form and nature*, were corrective steps necessary to terminate the agent's apparent authority as to the policyholders. Absent the letters, or other sufficient notice, the termination of the agent's actual authority may well have left extant apparent authority to bind the appellee.

Judge Bell, for the Court, said that the authority of an agent may be actual or apparent. *Hill v. State*, 86 Md.App. 30, 35, 585 A.2d 252 (1991). We opined, however, that the authority may be subject to limitation and that: "If that limitation is brought to the attention of the party with whom the agent is dealing, the power to bind the principal is subject to that limitation. Generally, one who deals with an agent knowing of the limitations cannot hold the principal beyond that limit." *Id.* at 35, 585 A.2d 252 (citation omitted). We know of no other reasonable way to notify the policyholders of the termination of appellant's authority other than to communicate that termination to them. Letters, especially those as restrained in content as in the case

at bar, are a particularly effective method of communication. Such letters do not give rise to separate causes of action vis-a-vis the principal and the agent.

Although we have not been directed to any Maryland cases, nor have we found any, expressly accepting such letters in an insurer/agent context as appropriate methods of communicating the termination of an agency to concerned third parties, courts of other jurisdictions have specifically held that letters of notification are either required or permitted.[3]

The Supreme Court of Nebraska in *Zukaitis v. Aetna Casualty and Surety Co.*, 195 Neb. 59, 236 N.W.2d 819, 821 (1975), stated the general rule in regard to policyholder notice when agency agreements are terminated:

[I]t is necessary to refer to the general law of agency.

The rule is that a revocation of the agent's authority does not become effective as between the principal and third persons until they receive notice of the termination. [Citations omitted.]

Quoting 3 George J. Couch, *Couch on Insurance 2d* section 26:51 (revised 1984),[4] the Court opined:

When the insurer terminates the agency contract, it is its duty to notify third persons, such as the insureds ... and inform them of such termination. If it does not ... the insurer is bound by the acts of the former agent.

*Zukaitis*, 236 N.W.2d at 821. *Accord Martin v. Argonaut Ins. Co.*, 91 Idaho 885, 434 P.2d 103, 107 (1967) (holding that no constructive notice to policyholder arises from a filing of agency termination with the Department of Insurance). The policyholder's letter in *Woodruff v. Auto Owners Ins. Co.*, 300 Mich. 54, 1 N.W.2d 450, 454 (1942), provided, in part:

---

3. *But see Travelers Indem. Co. v. Merling*, 326 Md. 329, 605 A.2d 83 (1992); *Medical Mut. Liab. Ins. Soc'y v. B. Dixon Evander & Assocs.*, 92 Md.App. 551, 609 A.2d 353 (1992).

4. The court actually cited to an earlier edition, but the language has remained the same.

> Please be advised that the H.C. Woodruff Agency ... has been discontinued as an agent ... effective April 1st, 1937.
>
> Therefore, for the time being, any reports of accidents or changes in your policy should be reported to T.M. Alexander....
>
> ....
>
> Assuring you of our continued prompt and careful attention to all matters pertaining to your policy with us....

The agent in *Woodruff* complained that the letter took an interest away from him. The court held:

> Appellee's contention that the letter was improper is not tenable. Its truthfulness or accuracy is not challenged. Defendant not only had a right to advise these policyholders of the termination of the Woodruff [A]gency, but it was its legal duty to do so or in the alternative be bound by any action of Mr. Woodruff within the scope of his former agency....

*Id.*

The appellee further asserts that if appellant were permitted to bring a tort action based on the letters sent to the policyholders, the insurers would be put in a precarious situation:

> Once a legal duty exists to notify the insured[s] in order to disavow the existence of apparent authority, the letter notifying the insureds that no such authority exists, apparent or otherwise, cannot, as a matter of law, then form the basis for tort claims for false light or tortious interference with contractual relations.
>
> A converse result would put insurers to a Hobson's choice. If insurers do *not* notify their insureds of the cancellation of an insurance agent, the doctrine of apparent authority may be applied to hold the insurer liable for the actions of the canceled insurance agent. If the insurer takes steps to withdraw the existence of apparent authority by writing to its insureds and informing them

of the cancellation of the insurance agent, the law then holds this same information sufficient to sustain tort claims for false light or tortious interference with contractual relations. [Citation omitted.]

We agree. As previously stated, the doctrine of apparent authority requires notification of termination of the agency relationship. Moreover, insurers are prevented from cancelling an insured's policy merely because the agency relationship has been terminated. Md.Ann.Code art. 48A, § 234B(c) (1991). A policyholder therefore has a statutory right to continuation of coverage by the same insurance company after termination of the agent's contract. An insurer must be able to notify the policyholder of the right to continuing coverage as well as termination of the agency agreement without being subject to suit for merely giving notice.

### The Exclusiveness of the Administrative Remedy

■ Had the trial court decided this issue on the sole ground that appellant had failed to exhaust his administrative remedy, it could have stayed the tort action and retained jurisdiction pending administrative exhaustion. *See McCullough v. Wittner,* 314 Md. 602, 613, 552 A.2d 881 (1989); *Maryland–National Capital Park and Planning Comm'n v. Crawford,* 307 Md. 1, 17, 511 A.2d 1079 (1986). By dismissing the matter, *the court* accepted appellee's contention that appellant's *sole* remedy was administrative. That contention was based on appellee's argument that the facts all related to the termination of the contract and, as to that matter, the Commission had exclusive jurisdiction.

A well-settled principle in administrative law is that where a statutory remedy is provided, that remedy is exclusive. Quoting in part from prior cases, the Court of Appeals, in *Board of Education v. Secretary of Personnel,* 317 Md. 34, 42, 562 A.2d 700 (1989), said: "Ordinarily where a statutory administrative remedy is provided, it will be deemed to be exclusive." Additionally, the Court, in *Prince George's County v. Blumberg,* 288 Md. 275, 283–85, 418

A.2d 1155 (1980), *cert. denied,* 449 U.S. 1083, 101 S.Ct. 869, 66 L.Ed.2d 808 (1981), stated:

> An examination of the decisions of this Court over the last four or five decades will supply ample support for the statement that there are few legal tenets which have received greater acceptance into the jurisprudential law of this State than the one announcing:
>
> .... [T]hat where a special form of remedy is provided, the litigant must adopt that form and must not bypass the administrative body or official, by pursuing other remedies.

[Citations omitted.]

Likewise in *McLean Contracting Co. v. Maryland Transportation Authority,* 70 Md.App. 514, 521–22, 521 A.2d 1251 (1987), we stated: "[A]bsent a legislative indication to the contrary, it will usually be deemed that the Legislature intended a special statutory remedy for the resolution of a particular matter to be exclusive." (Quoting *White v. Prince George's County,* 282 Md. 641, 649, 387 A.2d 260 (1978)).

Not only are statutory remedies exclusive, they must be exhausted before judicial review is granted. The Court of Appeals restated the doctrines of administrative exclusiveness and exhaustion of remedies in *White v. Prince George's County,* 282 Md. 641, 649, 387 A.2d 260 (1978):

> Where there exists a special statutory remedy for the resolution of a particular matter, as well as an ordinary action at law or in equity, whether the special statutory remedy is exclusive, and preempts resort to the ordinary civil action, is basically a question of legislative intent. In ascertaining that intent, it is a settled principle of statutory construction that, absent a legislative indication to the contrary, it will usually be deemed that the Legislature intended the special statutory remedy to be exclusive. Moreover, where the special statutory scheme for relief is exclusive and includes administrative proceedings and provisions for judicial review of the administrative decision, one must normally exhaust the administrative

remedy before recourse to the courts under the judicial review provisions. [Footnote omitted, citations omitted.] While the majority of cases in which *White* has been cited are tax cases and most of the cases cited in *White* are also tax cases, the doctrine of administrative exclusiveness has been referred to in numerous non-tax cases. *See DuBois v. City of College Park*, 280 Md. at 525, 533, 375 A.2d 1098 (1977), *rev'd on other grounds*, 286 Md. 677, 410 A.2d 577 (1980), *aff'd on other grounds*, 293 Md. 676, 447 A.2d 838 (1982), *cert. denied*, 459 U.S. 1146, 103 S.Ct. 787, 74 L.Ed.2d 993 (1983) (constitutionality of apportionment); *Soley v. State Comm'n on Human Rel.*, 277 Md. 521, 526, 356 A.2d 254 (1976) (civil rights violation); *Leatherbury v. Gaylord Fuel Corp.*, 276 Md. 367, 371–76, 347 A.2d 826 (1975) (action to enjoin threatened nuisance); *Agrarian, Inc. v. Zoning Inspector*, 262 Md. 329, 277 A.2d 591 (1971) (zoning); *Lee v. Secretary of State & Mahoney*, 251 Md. 134, 138–39, 246 A.2d 562 (1968) (challenge of registration of voters).

In *Magan v. Medical Mutual Liability Insurance Society*, 81 Md.App. 301, 567 A.2d 503 (1989), the appellant appealed the administrative decision and filed a separate suit in the circuit court sounding in tort. In reference to the administrative appeal, we stated:

> Medical Mutual's underwriting obligations are statutorily created and remedies for violations thereof must in the first instance be pursued with the Commissioner. Since Magan's statutory remedy is still being pursued before the Commissioner, he must await the outcome and, if unsuccessful, then the appropriate action is to appeal. Magan's attempt to supplement this process by filing a complaint in the circuit court is, as previously explained, a ploy to try the case twice and presumably appeal twice. Hence, dismissal was proper.

81 Md.App. at 313, 567 A.2d 503. Regarding the tort claim, we held that the administrative remedy could not be circumvented, stating that the appellant:

> [A]ttempt[ed] to circumvent these administrative procedures by pursuing a separate claim for damages in the

circuit court. Magan maintains that he can do this because his claim sounds in tort. This argument fails, however, since the factual predicate for his tort claims is founded on a statutory violation which carries with it a statutory remedy. In essence, what Magan is attempting to do is supplement his statutory remedy for damages by pursuing an action for tort damages in the circuit court. *Id.* at 308, 567 A.2d 503. As to administrative exclusiveness, we opined further in *Magan:* "Here, the administrative and judicial review provided for by the Maryland Insurance Code does not contain any statement or expression of legislative intent that § 55A is intended to be anything other than exclusive." *Id.* at 309, 567 A.2d 503.

We found *Magan* to be inapplicable in our recent case of *Medical Mutual Liability Insurance Society v. B. Dixon Evander & Associates, Inc.,* 92 Md.App. 551, 609 A.2d 353 (1992). Unlike the case at bar, *Medical Mutual* exemplifies an insurer that has exceeded the required and permissible actions relating to the termination of an agreement to accept business from a broker. We refer to it here by way of contrast, holding as we do that *Magan* retains its vitality in cases such as the one *sub judice.*

In *Medical Mutual,* as here, there were allegations of improper motives underlying the actual termination. Evander acted as a broker for doctors (insureds) and placed policies with Medical Mutual; however, he began to more aggressively place policies with another insurer. *Id.* at 556–58, 609 A.2d 353. As a result, Medical Mutual terminated its broker relationship with Evander. *Id.* at 559, 609 A.2d 353. It informed him by letter that it would not accept any more policies from his agency; it filed a complaint with the Insurance Commissioner seeking to have Evander's broker's license revoked, and it informed 600 policyholders that had been brokered by Evander that Medical Mutual's relationship with Evander had been terminated. *Id.* The letter went beyond mere notice of termination. It included an assertion that:

[A] few brokers are no longer representing Medical Mutual in a way that many of you feel to be adequate. *Id.* We noted in *Medical Mutual* that this statement had dominated the case before the trial court. *Id.* at 560, 609 A.2d 353. Because of the letter, Evander received numerous notices from doctors revoking its broker status. *Id.* at 561, 609 A.2d 353. Additionally, the Insurance Division found that a hearing was not warranted for Medical Mutual's complaint against Evander, but later held a hearing due to Medical Mutual's insistence and found that Evander did not violate the Insurance Code. *Id.* at 561, 609 A.2d 353.

The appellant in the case *sub judice* relied extensively on a statement we made in *Medical Mutual*. At one point in that case we opined: "Article 48A provides no statutory remedy for defamation or tortious interference; accordingly, this is not a situation in which the exercise of regulatory power may afford Evander relief or affect the scope or character of judicial relief." *Medical Mutual*, 92 Md.App. at 565, 609 A.2d 353. That statement was preceded by an extensive recitation of the factual situation that existed between Evander, *a broker*, and Medical Mutual. Under the circumstances of that case, the statement applied to the counts as there framed *and supported*. Our statement in *Medical Mutual* is correctly interpreted to mean that if the *gravamen* of the count constitutes a wrong independent of the statutory wrong and amounts to a tort, then Article 48A's applicability is not implicated. In the case at bar, the gravamen of the count, as the trial judge found and as we have said, is clearly a matter for administrative review.

The gravamen of Evander's case originated with one sentence in the letter of Medical Mutual mailed to its insured that, in effect, communicated to them that Evander was inadequate. That reason was potentially defamatory and maliciously false and proven so. As we perceive the letter in the case *sub judice*, it does not go beyond the mere communication that the agreements had been terminated. The Lincoln National letter merely complied with the dictates of the statute without recourse to any comment what-

ever as to the abilities or adequacy of Veydt. *See also Travelers Indem. v. Merling*, 326 Md. 329, 605 A.2d 83 (1992).

Additionally, the case at bar involves the termination of an insurer's agent. The contract and relations allegedly interfered with were the policies themselves and the relationships arising out of those policies. *Medical Mutual* involved the termination of the acceptance of business produced by a broker who was acting as the agent for doctors attempting to get insurance. The Annotated Code of Maryland, Article 48A, section 166 (1991), provides that an agent procures contracts for insurers and that a broker procures contracts for insureds. Thus, an agent represents and acts for the insurer while a broker acts on behalf of the insureds. In the agency situation, the resulting agreement is between the insurer and the insured; the agent's relationship with policyholders is synonymous with the insurer's relationship. Therefore, Lincoln National "cannot be guilty of the tort of wrongful interference with contractual or economic relations because it is a party to the insurance policies. For the tort to lie, the defendant tortfeasor cannot be a party to the contractual or economic relations with which he has allegedly interfered." *Travelers*, 326 Md. at 343, 605 A.2d 83. In contrast, the business relationships in *Medical Mutual* that were interfered with were the relationships between the doctors and Evander.[5]

As we see the issues here, *Medical Mutual* is clearly distinguishable. *Travelers Indemnity v. Merling*, 326 Md. 329, 605 A.2d 83 (1992), is closer on point and supports, as we see it, the holdings we make herein. The letters and

---

**5.** We noted in *Medical Mutual* that the insurer never raised the issue of whether it was a party to the economic relationship and thus we did not decide that issue in that case. We stated, however, that "It is clear that there were prior independent economic relationships or contracts; Evander's agreements with physicians were to obtain insurance for them." *Medical Mutual*, 92 Md.App. at 567 n. 5, 609 A.2d 353.

actions of Lincoln National more closely parallel the factual situation present in *Travelers.*

The letter in the present case merely stated:

The agent named above is no longer authorized by Lincoln National to service your Lincoln policies. It is your choice whether the agent continues to act as your representative. However, we feel you should know there are other alternatives....

If you need service, you have the option of contacting our local agency....

If you are considering any changes in your insurance program, we can probably offer advantages other companies cannot match—since you are already a Lincoln National policyholder.

In *Travelers,* after terminating Merling's agency, the insurer sent a letter to its insureds notifying them that the business relationship had ended. *Id.* at 334, 605 A.2d 83. It further stated that Merling was

"in the best position to handle your insurance needs, including placing your insurance with another company."
... "We urge you to contact your insurance agent for counseling ... or if you wish to continue insuring with The Travelers, a bill will be sent to you shortly." *Id.*

As a result of the termination and an alleged appropriation of commissions, Merling brought suit which included a count alleging "Conversion" (Count 1) and another count alleging "Intentional Interference With Property Rights" (Count 3). Count two alleged intentional interference with contractual or economic relations. The court described the gravamen of both Counts 1 and 3 as:

Merling's expirations were "converted" or "interfered with" by Travelers' action in sending renewal policies ... in such a manner that the business was not renewed through Merling and was renewed as house accounts.
*Id.* at 335, 605 A.2d 83 (footnote omitted).

The Court discussed the expiration and renewal issues at length before referring to this custom as a part of the

"American Agency System" under American common law principles which the court said prevented insurers from using "expirations" to solicit insureds or to refer them to other agents of the company. *Id.* at 338, 605 A.2d 83. The court then cited several foreign cases for the proposition that even under the American Agency System contact with insureds was nevertheless permissible, and in some cases, required and then commented: "Moreover, Maryland ... has legislatively changed the common law American Agency System." *Id.* at 339, 605 A.2d 83. It then referred to the extensive provisions now contained in Article 48A generally and section 234A, 234B and 234C specifically. *Id.* at 339–41, 605 A.2d 83. It discussed several matters not directly relevant to the issues in the case at bar before opining: "Travelers was simply complying with the mandate of the statute, rather than interfering with Merling's property rights...." *Id.* at 341–42, 605 A.2d 83. The *Travelers'* Court further pointed out that because the insurer was complying with the mandate of Article 48A in renewing policies of its insureds, its actions, which included the notice of termination, were not wrongful. *Id.* at 346, 605 A.2d 83. Thus, the insurer could not have *wrongfully* interfered with any other relationships Merling may have had with the insureds.[6] The court concluded that the actions of the insurer were not actionable conduct, saying, "The insurer's letters to the insureds were truthful and accurate. Travelers' actions were entirely lawful under the Maryland Insurance Code; in fact, the actions about which Merling complains were required by the Insurance Code, Art. 48A, § 234B." *Id.* at 346, 605 A.2d 83.

---

6. Merling had said in support of his RICO count that "Travelers' actions in mailing 'hundreds of deceptive letters to Merling's policyholders'" appropriated the expirations and thus constituted mail fraud. *Id.* at 345, 605 A.2d 83. In its resolution of the RICO count, referring to part one of its opinion in which Merling had alleged that Travelers' use of the expirations to contact (by letter) the insureds was wrongful, the Court said in conclusion "Travelers' actions were not wrongful.... Travelers' actions were entirely lawful under the Maryland Insurance Code...." *Id.* at 346, 605 A.2d 83.

Nowhere in his pleading below or in his brief here did appellant assert that any of the content of the aforesaid letter was untrue. At oral argument no assertion was made challenging the truthfulness of the letter's content. As we perceive it, what Lincoln National did in the case at bar is supported, to a substantial degree, by the holding in *Travelers*. *Medical Mutual* primarily illustrates the risks inherent in ascribing reasons for the termination of a business relationship when notifying others of that termination. Both the case at bar and *Travelers* illustrate the proper practice in limiting such notice to the termination itself and notice of the options thereafter available to policyholders. The letter in the case at bar does nothing to remove the insurer in this case from the sanctuary of *Magan*.

We see no substantial difference from *Magan* and what appellant attempted to do in the case *sub judice*. Appellant pursued an administrative appeal under Section 234B in respect to the termination of the agency contract, and he has filed this separate tort claim in the circuit court. Article 48A, section 234B provides a complete procedure and remedy. Subsection (d) contains express provisions prohibiting arbitrary, capricious and unfair cancellation of agency agreements.

As we have said, section 234B must be read in conjunction with section 55A. The penalty provision in section 55A confers authority on the Commissioner to "require that restitution be made" by an insurer for any "financial injury" or "damage" caused to any person as a result of a violation. *The Random House Dictionary of the English Language* 1222 (Unabridged ed. 1983), defines restitution as: "1. reparation made by giving an equivalent or compensation for loss, damage, or injury caused; indemnification. 2. the restoration of property or rights previously taken away, conveyed, or surrendered. 3. restoration to the former or original state or position...." *Black's Law Dictionary* 1313 (6th ed. 1991), as pertinent to the case at bar defines restitution as:

An equitable remedy under which a person is restored to his or her original position prior to loss or injury, or placed in the position he or she would have been, had the breach not occurred. Act of restoring; restoration; restoration of anything to its rightful owner; the act of making good or giving equivalent for any loss, damage or injury; and indemnification. Act of making good or giving an equivalent for or restoring something to the rightful owner. . . . Restoration of status quo and is amount which would put plaintiff in as good a position as he would have been if no contract had been made and restores to plaintiff value of what he parted with in performing contract. [Citations omitted.]

■ As we perceive sections 234B and 55A, they authorize the Commissioner to take action for the type of violation allegedly committed by the insurer in the present case. Appellant sues in the case at bar for both compensatory and punitive damages. Article 48A, section 55A authorizes the Commissioner to compensate appellant for his actual damages (restitution) and authorizes the Commission to punish appellee by the imposition of a penalty of up to $50,000. It is clear to us that the legislature, by its enactment of the statute has created an exclusive remedy to redress wrongs such as those alleged in the case at bar. The filing of a tortious complaint in an effort to circumvent the statute is, at best, a subterfuge; at worst, an abuse. Accordingly, we hold that the matter of the termination of at will insurance agency contracts[7] is generally an exclusive matter to be resolved under the provisions of Article 48A, sections 234B and 55A.

■ We further hold that the notification to policyholders by letter that there remains no authorization for the agent to continue to service the company's policies, so long as the letter is properly limited to the notification needs of the insurer and the informational needs of its insureds, does not

---

7. Agency contracts containing no specified period are generally "at will." The one at issue contains express terminable at will provisions.

give rise to any cause of action. Such limited letters are within the ambit of the exclusive administrative remedy provided by the Legislature.

JUDGMENT AFFIRMED; COSTS TO BE PAID BY APPELLANT.