658 A.2d 1106

Jose VICENTE, et al.

v.

The PRUDENTIAL INSURANCE COMPANY
OF AMERICA, et al.

No. 812, Sept. Term, 1994.

Court of Special Appeals of Maryland.

May 31, 1995.

Rebecca N. Strandberg (Carlin and Strandberg, on the brief), Bethesda, for appellants.

Bryan D. Bolton (Michael E. McCabe, Jr. and Shapiro and Olander, on the brief), Baltimore, for appellee, Prudential Ins. Co. of America.

Sergio Cabrera (pro se) (Glenn O. Hall, Jr. of Kensington, on the brief), for appellee, Cabrera.

Argued before WILNER, C.J., and HOLLANDER and SALMON, JJ.

SALMON, Judge.

On December 14, 1993, the Circuit Court for Montgomery County (Ryan, J.) dismissed, without prejudice, the third amended complaint filed by Carlos Vicente and his father, Jose Vicente, against The Prudential Insurance Company of America ("Prudential") and Sergio M. Cabreras, Prudential's agent. The Vicentes raise two issues on appeal, which we have rephrased for clarity:

1. Whether the circuit court properly dismissed the third amended complaint based on appellants' failure to exhaust their administrative remedies.

2. Assuming, *arguendo*, that some exhaustion was required, under the doctrine of "primary jurisdiction" should this case be remanded to the circuit court to be tried on its merits.

We answer "yes" to the first question and "no" to the second and shall affirm.

## BACKGROUND

In their third amended complaint, the Vicentes allege that they purchased a policy of health insurance issued by the National Independent Business Association ("NIBA"), based on Mr. Cabrera's representation that NIBA was licensed and authorized to do business in Maryland. According to the third amended complaint:

NIBA was not licensed or authorized to do business in the State of Maryland which is in violation of the Maryland Annotated Code, Art. 48A, Section 1. Such licensing required that the insurer meet certain capital requirements and other standards to protect the public and in fat [sic] the sale of such insurance was illegal.

The Vicentes alleged that Mr. Cabrera represented to them that he was an "agent and registered representative of . . . Prudential" and that Mr. Cabrera's false representations were made "on behalf of" Prudential.

The Vicentes further alleged that, but for the representation by Mr. Cabrera that NIBA was both authorized to do business in Maryland and adequately capitalized, they would not have purchased the NIBA policy. According to the third amended complaint, the misrepresentations resulted in damages because, while the NIBA policy was in effect, the Vicentes were hospitalized and incurred medical expenses of $25,273.01, of which NIBA was required to pay $23,181.40. After appellants submitted their claim to NIBA, they were advised that NIBA was in receivership, and no part of their claim was paid.

The third amended complaint purported to state causes of action for negligent misrepresentation (Count I), fraud (Count II), constructive fraud (Count III), and negligent supervision (Count IV). Each cause of action was predicated on Mr. Cabrera's (alleged) "false representation" to insurance applicants (the Vicentes) that NIBA was licensed in Maryland and adequately capitalized.

### EXHAUSTION OF REMEDIES

■ The general exhaustion of remedies rule is that, "where a statute provides a special form of remedy, the plaintiff must use that form [of remedy] rather than any other." *Bits "N" Bytes v. C & P Telephone,* 97 Md.App. 557, 573, 631 A.2d 485 (1993), *citing Soley v. State Comm'n on Human Relations,* 277 Md. 521, 526, 356 A.2d 254 (1976). The central issue here presented is whether any section of the Insurance Code of Maryland provides a "special form of remedy" available to the Vicentes.

Subtitle 15 of the Insurance Code of Maryland [1] encompasses §§ 212–240J of Art. 48A, which address unfair trade practices in the insurance industry. As used in the insurance code, "Unfair Trade Practices Act" means practices prohibited by §§ 212 through 234, inclusive, of Art. 48A. One of the categories of unfair trade practices, set forth in Subtitle 15, is titled "fraudulent acts." Such acts are defined in § 233 of the Unfair Trade Practices Act. Section 233(d) reads, in pertinent part, "It shall be a fraudulent insurance act for a person to: (1) Knowingly or willfully make any false or fraudulent statement or representation ... with reference to any application for insurance...." [2] The insurance code, § 4, defines "per-

---

1. The Insurance Code is codified at Md.Code (1957, 1994 Repl.Vol.), Art. 48A. In this opinion, references to sections will refer to Art. 48A.

2. Section 233(d), in its entirety, is as follows:

   *False applications, sworn statements, exhibit of accounts, documents, etc.; placing insurance with unregulated insurer; operating unauthorized insurance business.*—It shall be a fraudulent insurance act for a person to:

   (1) Knowingly or willfully make any false or fraudulent statement or representation in or with reference to any application for insurance;

   (2) Place insurance with an unauthorized insurer not regulated by the Commissioner and refuse to obey an order by the Commissioner to produce for examination all policies and other documents evidencing the insurance and the amount of premiums paid or agreed to be paid for the insurance;

   (3) Where a certificate of authority is required, operate an insurer or conduct an insurance business without obtaining a certificate of authority issued by the Commissioner;

son" as "includ[ing] an individual, insurer, . . . and any other legal entity."

Section 233(e) [3] provides:

*Penalties.*—A person who violates this section is guilty of a misdemeanor and is subject to a fine up to $10,000 or imprisonment for up to 3 years or both.

Section 55A of Art. 48A provides:

*Penalty in lieu of or in addition to revocation or suspension; restitution.*

In lieu of or in addition to revocation or suspension of an insurer's certificate of authority the Commissioner may (1) impose a penalty of not less than one hundred dollars ($100) or more than fifty thousand dollars ($50,000) for each violation of this article on any insurer whose certificate of authority is subject to revocation or suspension under the provisions of this article, and (2) *require that restitution be made by such insurer to any person who has suffered financial injury or damage as a result of such violation.*

(Emphasis added).

In *Veydt v. Lincoln Nat. Life Ins. Co.*, 94 Md.App. 1, 6, 614 A.2d 1318 (1992), the Court explained:

Maryland Annotated Code article 48A, section 55A, is the penalty provision of the Insurance Code. By Chapter 755 of the Laws of 1971, the Legislature reiterated its intention that the Commissioner be fully charged with the responsibility to remedy violations of Article 48A when it increased the maximum penalty the Commissioner can impose from

---

(4) Make a false sworn statement that the person does not believe to be true as to matter material to an examination, investigation, or hearing conducted by the Commissioner; or

(5) With intent to deceive, knowingly exhibit a false account, document, or advertisement, relative to the affairs of an insurer.

Effective October 1, 1994, § 233 added a new subsection (a) dealing with definitions and reworded the remaining subsections accordingly. As far as this case is concerned, there were no substantive changes.

**3.** Effective October 1, 1994, Section 233(e), was designated and reworded as § 233(f). Penalties were increased under new § 233(f). This case was decided prior to the October 1, 1994 effective date.

$25,000 to $50,000 and, more important, added to section 55A provisions authorizing the Commissioner to *"require that restitution be made by such insurer to any person who has suffered financial injury or damage as a result of such violation."*

(Emphasis added).

Appellants' counsel, in oral argument, admitted that the wrongs alleged in the third amended complaint are prohibited by the Unfair Trade Practices Act. Appellants assert, however, that in the case *sub judice* "it appears that there was concurrent jurisdiction—the Insurance Commissioner as to Violation of the Insurance Code and the Courts as to the tort action." (Brief, p. 10). Appellants maintain that, although the Insurance Commissioner has jurisdiction, appellants were not required to exhaust administrative remedies before instituting suit. Relying entirely on § 215, appellants argue:

In this case, the legislature cannot have been clearer. It has specifically stated that it is not an exclusive remedy *by stating that with regard to the remedies provided by the Insurance Code for unfair trade practices* that as to a cease and desist order of the Commissioner, "No order of the Commissioner pursuant to this section or order of court to enforce it shall in any way relieve or absolve any person affected by such order from any other liability, penalty, or forfeiture under the law." Art. 48A, § 215(c), MD.ANN. CODE.

What language could be clearer than to say that no one is absolved from other liability or penalty by the remedy provided in this case? This language makes it clear that the legislature did not intend to make this an exclusive remedy which would preclude other common law or even statutory remedy.

(Emphasis added).

Section 215 reads, in pertinent part:

*Cease and desist orders for prohibited practices.*

(a) *When issued.*—If, after a hearing thereon of which notice of such hearing and of the charges against him were

given such person, the Commissioner finds that any person in this State has engaged or is engaging in any act or practice defined in or prohibited under this subtitle, the Commissioner shall order such person to cease and desist from such acts or practices.

* * * * * *

(d) *Effect of order on other liability, penalty or forfeiture.*—No order of the Commissioner pursuant to this section or order of court to enforce it shall in any way relieve or absolve any person affected by such order from any other liability, penalty, or forfeiture under law.

(e) *Violation of order.*—Violation of any such desist order shall be deemed to be and shall be punishable as a violation of this article.

(f) *Penalties provided by other laws not affected.*—This section shall not be deemed to affect or prevent the imposition of any penalty provided by this article or by other law for violation of any other provision of this subtitle, whether or not any such hearing is called or held or such desist order issued.

As mentioned above, appellants argue, based on § 215, that remedies in the Insurance Code for unfair trade practices "are not exclusive remedies." Three cases refute this contention: *Muhl v. Magan,* 313 Md. 462, 545 A.2d 1321 (1988) (*Magan I* ); *Veydt, supra;* and *Magan v. Medical Mutual,* 81 Md.App. 301, 567 A.2d 503 (1989) (*Magan II* ).

In *Muhl v. Magan* (*Magan I* ), *supra,* the Court was faced with an allegation by Dr. Michael Magan that Medical Mutual Liability Society of Maryland (Medical Mutual) had wrongfully refused to insure him. 313 Md. at 469, 545 A.2d 1321. Dr. Magan contended that Medical Mutual's refusal to provide coverage constituted a violation of Art. 48A, § 234A. That claim, if proven, was "one of the unfair trade practices addressed in Subtitle 15. . . ." 313 Md. at 465, 545 A.2d 1321. Dr. Magan filed a complaint with the Insurance Commissioner and requested a hearing pursuant to § 35(2), but the request was denied. An appeal was filed to the circuit court. In the

circuit court, both the Insurance Commissioner and Dr. Magan agreed that the court should decide the merits of the case, *i.e.*, whether, under applicable law, Medical Mutual was required to issue a policy to Dr. Magan. The Court of Appeals reversed, holding that the circuit court should not have decided the merits of the case before administrative remedies were exhausted by Dr. Magan. 313 Md. at 478–80, 545 A.2d 1321. The lower court appropriately should have decided only if Dr. Magan was entitled to a preliminary hearing.

In *Magan I,* 313 Md. at 465, 545 A.2d 1321, the Court of Appeals discussed the comprehensive legislative insurance regulatory scheme set forth in Subtitle 15:

> With respect to unfair trade practices defined in Subtitle 15, the Commissioner is authorized to issue a cease and desist order against the violator upon a finding of violation after a hearing on notice, including notice of the charges. § 215(a). With respect to undefined unfair trade practices the Commissioner is authorized by § 216 to conduct a hearing, after notice, including notice of charges, and upon finding of violation which is not discontinued, to cause the Attorney General to seek an injunction.

In explaining why the circuit court should not have decided the merits of Dr. Magan's case, the Court went on to say:

> The remedy which the General Assembly has created for situations involving insurers who decline to accept a particular risk lies under 234A and related provisions and is enforced through the procedures *applicable to that type of unfair trade practice under the Insurance Code.*
>
>> Where the General Assembly has provided a special form of remedy and has established a statutory procedure before an administrative agency for a special kind of case, a litigant must ordinarily pursue that form of remedy and not bypass the administrative official. *Prince George's County v. Blumberg,* 288 Md. 275, 418 A.2d 1155 (1980), *cert. denied,* 449 U.S. 1083, 101 S.Ct. 869, 66 L.Ed.2d 808 (1981). So strong is this public policy that this Court will, *sua sponte,* vacate judgment and order an action dis-

missed where the litigants have not followed the special statutory procedure. *See Secretary, Department of Human Resources v. Wilson,* 286 Md. 639, 409 A.2d 713 (1979); *Commission on Medical Discipline v. Bendler,* 280 Md. 326, 373 A.2d 1232 (1977). [*Oxtoby v. McGowan,* 294 Md. 83, 91, 447 A.2d 860, 865 (1982).]

313 Md. at 480–81, 545 A.2d 1321 (emphasis added).

While *Magan I* was pending in the Court of Appeals, Dr. Magan filed a tort suit against Medical Mutual and certain of its officers and directors. Dr. Magan alleged that Medical Mutual had "breached its duty" to insure licensed physicians in Maryland by denying his application for insurance and violated the trial court's order to insure him at standard rates by seeking to impose a surcharge on him. *Magan II,* 81 Md.App. at 305, 567 A.2d 503. The suit sought compensatory and punitive damages. The trial court dismissed the suit on the basis that the circuit court lacked subject matter jurisdiction because Dr. Magan had failed to exhaust administrative remedies. In *Magan II,* this Court said:

In *Secretary, Maryland Department of Human Resources v. Wilson,* 286 Md. 639, 409 A.2d 713 (1979), the Court of Appeals explained the public policy behind the exhaustion of administrative remedies rule. The Court said:

"Thus, this Court recognized that when the Legislature enacts a comprehensive remedial scheme in which a claim is to be determined by an administrative agency and reviewed in an administrative appeal before judicial review is available, it establishes, as public policy, that such a procedure produces the most efficient and effective results. In order to effectuate this public policy, trial courts generally should not act until there has been compliance with the statutory comprehensive remedial scheme."

*Wilson,* 286 Md. at 645, 409 A.2d 713 (citations omitted).

In the instant case, the complaint, filed in the circuit court, was grounded upon Medical Mutual's refusal to underwrite Magan, an alleged violation of the Maryland Insur-

ance Code. The Insurance Code provides a comprehensive administrative structure and established a uniform method of appeal for an individual aggrieved by an insurer's violation of the Maryland Insurance Code, Md.Code Ann. Art. 48A (1957, 1986 Repl.Vol., 1989 Cum.Supp.).

81 Md.App. at 306–07, 567 A.2d 503 (footnote omitted).

Later the *Magan II* Court said:

Here, Magan attempts to circumvent these administrative procedures by pursuing a separate claim for damages in the circuit court. *Magan maintains that he can do this because his claim sounds in tort. This argument fails, however, since the factual predicate for his tort claims is founded on a statutory violation which carries with it a statutory remedy.* In essence, what Magan is attempting to do is supplement his statutory remedy for damages by pursuing an action for tort damages in the circuit court. In order for Magan to maintain a separate action in the circuit court, he must pursue a recognized alternate remedy under common law principles. *See White v. Prince George's County,* 282 Md. 641, 650–51, 387 A.2d 260 (1978).

*Id.* at 308, 567 A.2d 503.

In *Magan II,* the Court concluded by flatly rejecting Dr. Magan's contention that he could bring a common law tort action and held that "the Legislature intended § 55A to be an exclusive remedy."

In *Veydt, supra,* an insurance agent (Veydt) sued Lincoln National Life Insurance Company (the insurer) after the insurer terminated an at-will insurance agency agreement with him. The agent sued for "false light" (a type of invasion of privacy) and "Tortious Interference with Business Relationships." The trial court dismissed the suit, saying:

The verbal [written] communications, which form the predicate for Veydt's claims, are so intricately bound up with the act of termination ... that they cannot be made the basis for a separate tort claim. . . .

. . . .

> If a common law tort claim may be asserted on the basis of verbal acts forming a necessary and appropriate part of the process of [agency] contract termination, as regulated under sec. 234B(d), then that subsection would have no vitality whatsoever. . . .
>
> . . . .
>
> It is difficult to imagine how the Commissioner's legislatively-created primary jurisdiction over· terminations that are "arbitrary, capricious, unfair or discriminatory" would survive the artful pleading of skillful advocates. Here, the amended complaint's heavy reliance upon Lincoln's **communications** does not obscure the reality that Lincoln's act (of contract termination) is the gravamen of the alleged harm.

94 Md.App. at 5–6, 614 A.2d 1318.

In *Veydt,* this Court held:

> We see no substantial difference from *Magan* and what appellant attempted to do in the case **sub judice.** Appellant pursued an administrative appeal under Section 234B in respect to the termination of the agency contract, and he has filed this separate tort claim in the circuit court. Article 48A, section 234B provides a complete procedure and remedy. Subsection (d) contains express provisions prohibiting arbitrary, capricious and unfair cancellation of agency agreements.
>
> As we have said, section 234B must be read in conjunction with section 55A. The penalty provision in section 55A confers authority on the Commissioner to "require that restitution be made" by an insurer for any "financial injury" or "damage" caused to any person as a result of a violation. . . .

*Id.,* 94 Md.App. at 19, 614 A.2d 1318.

The common thread running through *Magan I, Veydt,* and *Magan II* is that all three cases involved claims covered by the Unfair Trade Practices Act, and in both *Magan II* and *Veydt* the Court flatly held that the Legislature intended the remedies set forth in § 55A to be exclusive.

The obvious meaning of § 215(d) and (f) is that a cease and desist order is not to be interpreted as an exclusive remedy. Section 215, by its terms, is silent as to whether the remedies set forth elsewhere in Art. 48A are exclusive. Appellants' interpretation starts off with the implied assumption that, despite the remedies set forth in § 55A, there is still "some other liability" that may be imposed on the insurer at common law when the insurer violates a section of the code dealing with unfair trade practices. For the reasons stated in *Magan I*, *Veydt*, and *Magan II*, *all supra*, we disagree.

### *PRIMARY JURISDICTION*

In *Bits "N" Bytes*, 97 Md.App. at 574, 631 A.2d 485, this Court explained: "Primary jurisdiction 'is a judicially created rule designed to coordinate the allocation of functions between the court and administrative bodies.'" *Citing Maryland Nat'l Capital Park & Planning Comm'n*, 282 Md. 588, 602, 386 A.2d 1216 (1978). In *Bits "N" Bytes*, we held that the doctrine applies only when a court and an administrative agency have concurrent jurisdiction over the same matter and there is no statutory provision to coordinate the work of the court and the agency. *Id.* The circuit court and the Insurance Commissioner do not have concurrent jurisdiction over violations of the Unfair Insurance Trade Practices Act (Subtitle 15), such as violation of 233(d). Before resorting to the court, an insured must exhaust administrative remedies. *Magan II*, 81 Md.App. at 311–12, 567 A.2d 503 (holding that the circuit court jurisdiction was not concurrent with that of the Insurance Commissioner). When the doctrine of exhaustion of administrative remedies is applicable, there is no right to "an independent civil action after the administrative decision." *Id.*, 97 Md.App. at 572, 631 A.2d 485. Also, in regard to violations of the Unfair Trade Practices Act, there *are* statutory provisions for the coordination of the work of the court and the agency. A party who suffers from an unfair trade practice may ask the Commissioner to conduct an examination or investigation (§ 243); ask the Insurance Commissioner to conduct a hearing (§ 35); and obtain, *inter alia,* restitution

under § 55A. Thus, the "primary jurisdiction" doctrine is not here applicable.

**JUDGMENT AFFIRMED; COSTS TO BE PAID BY APPELLANTS.**