**Richard M. KASER, Plaintiff,**

v.

**PROTECTIVE LIFE INSURANCE CO., et al., Defendants.**

**No. CIV.A.WDQ–01–2601.**

United States District Court,
D. Maryland,
Northern Division.

Sept. 17, 2003.

Roderick R Barnes, Ferguson Schetelich and Ballew PA, Baltimore, MD, for Richard M. Kaser, Plaintiff.

Marta D Harting, Robert J. Mathias, Melissa Lea Mackiewicz, Piper Rudnick LLP, Baltimore, MD, for Protective Life Insurance Company, Honorable William D. Quarles, Jr., Financial Protection Marketing, Inc., Defendants.

### MEMORANDUM OPINION

QUARLES, District Judge.

Pending are motions to lift stay and to dismiss or, in the alternative, for summary judgment, filed by defendants Protective Life Insurance Company ("PLIC") and Financial Protection Marketing, Inc. ("FPM").

### I. Background

Plaintiff Richard M. Kaser is an "independent insurance agent" who matches businesses selling insurance with clients seeking it. Amended Complaint at ¶ 7. Kaser had a relationship with Chevy Chase Bank ("Chevy Chase"). *Id.* at ¶ 12. Chevy Chase contacted Kaser, seeking to insure against losses from automobile leasing. Amended Complaint at ¶¶ 9–11. Af-

ter Kaser successfully matched Chevy Chase with FPM, the companies entered into a Guaranteed Residual Investment Protection Master Policy ("GRIP"). *Id.* at ¶ 18. In consideration for Kaser's services, he and FPM entered into a Guaranteed Residual Investment Protection General Agent Agreement ("the agreement"), which paid Kaser a 7.5% commission on net written premiums from policies he facilitated. Motion to Dismiss, Ex. 1, ¶¶ 2–3.

After the agreement became effective, James E. Hughes, the president of FPM, began to probe Kaser for information about his Chevy Chase contacts. Amended Complaint ¶ 22. In September 2000, Hughes was notified of his imminent termination and began soliciting policyholders, including Chevy Chase, in an attempt to become the agent of record on their accounts. *Id.* at ¶ 23–24.

In early December 2000, FPM was consolidated into PLIC and Kaser was terminated. *Id.* at ¶ 26. In January 2001, Hughes was appointed as agent of record for the Chevy Chase account. *Id.* at ¶ 29.

On August 29, 2001, Kaser filed this complaint. On January 3, 2002, this Court dismissed most of the complaint with leave to file an amended complaint stating the tortious interference with economic relations claim. January 3, 2002 Memorandum Opinion at 22.[1] After Kaser filed an Amended Complaint alleging tortious interference with economic relations and breach of contract against FPM and PLIC, this Court certified a question to the Maryland Court of Appeals: whether a defendant could tortious interfere with a relationship of which it was a part. March 14, 2003 Memorandum and Certification Order at 2. On August 28, 2003, the Court of Appeals answered the certified question in the negative.

## II. Discussion

### 1. Motion to Lift Stay

Because the Maryland Court of Appeals has answered the certified question, the stay will be lifted, and the Court will address the merits of the defendants' motion to dismiss.

### 2. Tortious Interference with Economic Relations

■ The Court of Appeals held that because FPM was a party to the economic relationship with Kaser, he could not bring a claim against FPM for tortious interference. *Kaser v. Financial Protection Marketing, Inc.,* 376 Md. 621, 831 A.2d 49, 53 (Md.2003), *citing Travelers Indem. Co. v. Merling,* 326 Md. 329, 343, 605 A.2d 83 (1992). The Court of Appeals held that PLIC was also a party to this relationship, because it issued the insurance, through FPM, to Chevy Chase. *Kaser,* 831 A.2d at 53. Accordingly, Kaser cannot maintain a tortious interference with economic relations claim against either entity.

### 3. Breach of Contract

■ Kaser's breach of contract claims against FPM and PLIC are based on his wrongful termination, which resulted from Hughes' direct competition with Kaser for Maryland clients, specifically Chevy Chase Bank. Amended Complaint, ¶¶ 184, 191. An insurance agent or broker alleging unfair termination of a written agreement must pursue the exclusive administrative remedy provided by Md. Ins.Code Ann. §§ 27–503(d) & 4–113. *Veydt. v. Lincoln Nat. Life Ins. Co.,* 94 Md.App. 1, 20, 614 A.2d 1318 (1992).[2] Moreover, if the dis-

---

**1.** The claims that were not dismissed in the January 3, 2002 Memorandum Opinion had been previously dismissed because they were filed against defendants that were not subject to this Court's jurisdiction. December 3, 2001 Memorandum.

**2.** As the Court of Appeals noted, PLIC provides insurance through FPM. *Kaser,* 831 A.2d

pute involves an unfair termination, other claims which are intertwined with the dispute must be resolved through that procedure. *Id.* at 15, 614 A.2d 1318.

Kaser alleges that the agreement was unfairly terminated because Hughes stole his client, Chevy Chase Bank. Any claims against FPM and PLIC based on Hughes' conduct must be resolved through the exclusive administrative remedy. *Id.* Accordingly, Kaser has not stated a common law claim upon which relief can be granted. *Beach v. Owens–Corning Fiberglas Corp.,* 728 F.2d 407, 409 (7th Cir.1984) (when state administrative remedy is exclusive, there is no common law claim).

### III.   Conclusion

Because the Court of Appeals has answered the certified question, the stay will be lifted. Kaser has failed to state common law claims upon which relief can be granted. Accordingly, his complaint will be dismissed.

### *ORDER*

For the reasons stated in the accompanying Memorandum Opinion, it is this 17th day of September, 2003, ORDERED:

1.   That Defendants' Motion to Lift the Stay BE, and hereby is, GRANTED;

2.   That Defendants' Motion to Dismiss BE, and hereby, is, GRANTED;

3.   That the Clerk of the Court shall MAIL copies of this Order and the Memorandum Opinion to counsel.

at 53.   Therefore FPM and PLIC are both insurers within the meaning of Md. Ins.Code